CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

MAY 28 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DEMETRIUS HILL, | ) | |
| Plaintiff, | ) | Civil Action No. 7:08-cv-00283 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| TERRY O'BRIEN, WARDEN, et. al., | ) | By: Hon. James C. Turk |
| Defendants. | ) | Senior United States District Judge |

Plaintiff Demetrius Hill, a federal inmate proceeding pro se, brings this civil rights action against federal prison officials under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). In his complaint, Hill alleges that the defendants, prison officials at the United States Penitentiary in Lee County, Virginia ("USP Lee"), used excessive force against him, restrained him under unconstitutional conditions, and denied him medical care, in violation of his rights. The court conditionally filed the complaint, notified Hill that his original allegations failed to state constitutional claims against anyone, and granted him an opportunity to amend to particularize his claims. Hill has filed motions to amend (Dkt. Nos. 6 & 7), which the court will grant. Upon consideration of the complaint as amended, the court finds that all but three of Hill's claims should be dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim upon which relief may be granted.[1]

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

1

I

In his complaint and his later amendments, Hill alleges the following sequence of events from which his claims arise.

**Claim 1: Excessive Force & No Asthma Pump**

On November 1, 2007, corrections officers under the direction of Lt. Stiger and Captain Wilson placed Hill and his cell mate in ambulatory restraints without justification, according to Hill. Such restraints involve placing the inmate in handcuffs, shackles, and waist chain, with a "black box" over the handcuffs to make them "excessively tighter and cause continuous pain to the wrist." The cuffs and waist chain were "excessively tight" on Hill's wrists, but Nurse Meade, who checked the restraints, said nothing. Hill told the nurse that he needed to use his asthma pump. She did not respond.

The staff members left Hill and his cell mate, each in the ambulatory restraints, in the stripped cell for 14 to 16 hours. The cell had no toilet or sink and reeked of urine and defecation; Hill saw "dried brown feces in the crevices of the walls & dried urine stains all over the floor." The vent "blew non-stop cold air." During the night, the men tried to sleep in restraints. Hill began wheezing, but "was refused [his] asthma pump." The nurse did not make periodic checks of the inmates' medical condition. Hill's joints "began to stiffen," his arms, wrists, and hands were in constant pain, and by morning, his hands were swollen and in pain; his entire body, particularly his upper body, was in pain. When Hill was released from restraints the next morning, no nurse evaluated his injuries, and officers refused his request that his wrists and hands be photographed..

Hill asserts that USP Lee had (and perhaps still has) a policy of placing non-combative inmates in ambulatory restraints for lengthy periods as corporal punishment to serve as a deterrent

2

of "perceived misconduct," even after the restrained inmate no longer poses any threat to security or order. He asserts that on November 1, 2007, Warden O'brien and Associate Warden Strickland are responsible for the policy, and that Captain Wilson authorized the implementation of the policy against Hill on that date.

**Claim 2: Bright Lights**

Hill asserts that the USP Lee policy of leaving two fluorescent lights burning in his special housing unit cell for sixteen hours per day is cruel and unusual punishment. He alleges that this condition deprives him of the ability to sleep during the day and has caused him headaches, "hallucinations," and "eye strain." If inmates cover the lights, they are disciplined. Hill asserts that the lights are not necessary for security, as they are turned off at night, and the officers use flashlights when doing rounds.

**Claims 3 and 4: Hazardous Conditions & Interference with Grievances**[2]

Hill alleges that his initial placement in the SHU was unconstitutional because the holding cell had no toilet. He had to urinate in a handheld urinal and to defecate in a pan, then place the feces in a plastic bag and push it out the "feeding slot." The next day he was forced to double cell with another inmate in a cell where the lights are on all day and he could not flush the toilet himself.

When Hill tried to file grievances about these conditions, prison officials interfered with his attempts to exhaust administrative remedies about the challenged events and conditions. He alleges that officers threw away new grievance forms, required him to wait until after the appeal process on one grievance is complete before starting another, required that a grievance address no more than

---

[2] Hill complains through out his complaint about the problems he has faced in attempting to exhaust administrative remedies. The court will address all of these complaints as a group.

3

one complaint, refused to provide grievance forms when requested, failed to respond in a timely manner to his grievances, did not provide immediate receipts for grievances, and failed to conduct disciplinary hearings properly.

Hill asserts that the warden's policy of allowing inmates to receive administrative remedy forms only from their counselors deprives Hill and other inmates of their ability to exhaust remedies. When he complained that his counselor refused to provide him with remedy forms, supervisory defendants did not respond or assign him to another counselor.

### Claim 5(v): Inadequate Medical Care for Asthma[3]

Hill also complains about inadequate preventative treatment for his asthma condition. Nurses have not provided "nebulizer" breathing treatments, have not listened for wheezing in Hill's lungs, using instead a "saturation test on his finger," and have not ensured that refills of his medication are ordered in advance, as the facility has no pharmacy. Hill alleges that although Dr. Alred has ordered "regular peak flows," these tests have not been performed, and that no nurse is present at the facility to assist him if he should happen to have an asthma attack at night.

### Claim 5(x) & (y): Excessive Force and Retaliation

Finally, Hill asserts that on January 15, 2008, without justification, Officer Taylor used excessive force against him. While pushing Hill through a "range gate," Taylor allegedly grabbed Hill's arm, dug his fingers into the arm, causing severe pain, and then forcing Hill, face first, to the ground while in restraints. Hill twisted to protect his head and landed on his shoulder. Once Hill was on the ground, someone (he believes it was Taylor) "kept digging [his] fingers into the pressure

---

[3]Claim 5 includes four, overlapping claims, identified in the complaint by paragraph letters– v, w, x, and y. As the allegations in Claim 5(w) concern problems with the grievance procedure, the court will address it along with Hill's similar allegations in other parts of the complaint.

4

point behind [Hill's] jaw and under his ear, causing constant pain." Hill suffered "constant lockjaw and pain in his lower back and had a large bruise on his arm."

Allegedly to justify the use of force, Taylor falsely charged Hill with refusing to obey an order; the hearing officer expunged this charge and only found Hill guilty of "threatening," based on conduct that occurred after Hill was on the ground. After Hill threatened to sue Taylor for the abuse, Taylor "made up" the facts in his report about the January 15, 2008 incident. Hill had a staff representative check the surveillance video footage of the range gate area, and the report was "dismissed."

**Claim 6: Excessive Force on November 1, 2007**

Hill raises Claim 6 in a motion to amend, seeking to add new defendants, Officer Crum and Officer Martin. He alleges that on November 1, 2007, Crum deprived Hill of his recreation. With Hill already cuffed behind his back, Crum punched him in the ribs, elbowed him in the side of the head, and said something like "break another sprinkler, I'll break your neck." Crum then told Martin to "handle business." Martin came into Hill's cell, took each piece of his legal work out of the plastic with which Hill had wrapped it, and put the legal papers and Hill's books, one by one, into the water on the cell floor. Hill alleges that this incident "came as a result of [his] repeated attempts to file complaints" against Crum and Martin "for harassment, verbal abuse, constant denial of outdoor recreation and other abuses." Martin allegedly told Hill, "Do you really believe you'll find any justice out here, boy? Look around where you at." When Hill grieved this incident, the national administrator of inmate appeals noted that "conduct such as that you allege is not condoned," but for lack of "sufficient information" on which to make a determination, the administrator referred the matter to another component of the BOP for review.

5

## II

In Bivens, the Supreme Court held that damage suits could be maintained against federal officials for violations of the Constitution committed when the officials were acting under color of law. 403 U.S. at 392. An action under Bivens is almost identical to an action under 42 U.S.C. §1983, except that the former is maintained against federal officials for violation of constitutional rights while the latter is against state officials. See Carlson v. Green, 446 U.S. 14, 24 25 (1980); Butz v. Economou, 438 U.S. 478, 504 (1978). Case law involving § 1983 claims is applicable in Bivens actions and vice versa. See Farmer v. Brennan, 511 U.S. 825 (1994); Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Turner v. Dammon, 848 F.2d 440, 443-44 (4th Cir.1988). To hold a supervisory official liable under § 1983 or Bivens, plaintiff must make a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir.1982).

The Court is required to dismiss any action or claim filed by a prisoner if it determines the action or claim if frivolous, malicious, or fails to state a claim on which relief may be granted. See 28 U.S.C. § 1915A. A claim or action is frivolous if it is based on "an indisputably meritless legal theory," or "clearly baseless" factual contentions. Neitzke v. Williams, 490 U.S. 319, 327 (1989). A litigant may be deemed to act maliciously if the complaint and/or the inmate's litigation history reflect that his motive in bringing suit is merely to vex and harass the defendants. Johnson v. Edlow, 37 F. Supp.2d 775, 776 (E.D. Va. 1999). An action or claim may be dismissed for "failure to state a claim" when the court finds that the allegations, taken in the light most favorable to plaintiff, are nothing "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of

action," that are insufficient "to raise a right to relief above the speculative level" to one that is "plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65, 1974 (2007). In short, to survive screening under § 1915A, plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003).

**A. Excessive Force**

The Eighth Amendment prohibits prison officials from using force unnecessarily and wantonly to inflict pain on inmates. Whitley v. Albers, 475 U.S. 312, 319 (1986). A claim that guards used excessive force against an inmate requires a dual inquiry: (1) the objective nature of the force used and the resulting harm and (2) the subjective intent of the officers. Hudson v. McMillian, 503 U.S. 1, 7 (1992). The key inquiry under the subjective prong of this test is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 8. In making this determination, the court must balance such factors as the need for the application of force, the relationship between the need and the amount of force actually applied, and the extent of injury inflicted. Id. at 7. De minimis injury can be conclusive evidence that the force used was also de minimis and, therefore, not violative of constitutional protections. See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994). Thus, absent the most extraordinary circumstances, an inmate cannot prevail on an excessive force claim unless he proves more than de minimis pain or injury. Id.

In an abundance of caution, the court finds that Hill's allegations state a possible claim that officers used excessive force against him when placing him in ambulatory restraints and by leaving him restrained in this manner for more than half a day on November 1, 2007. He alleges that he

7

suffered extreme pain from the restraints over this lengthy period and may be able to prove that such pain was more than de minimis. He also alleges that his behavior, before and during the restraint period, did not justify such a response from security officers and that officials have a policy of placing inmates in ambulatory restraints for lengthy periods past when the inmate is no longer a security threat. As the court cannot find without doubt that Hill would be unable to prove facts consistent with these allegations that would state a claim, the court will not dismiss Hill's first excessive force claim at this stage of the litigation under § 1915A(b)(1).[4] The clerk will attempt service of this claim (Claim 1) on the following defendants: Warden O'Brien and Associate Warden Strickland (regarding the ambulatory restraints policy) and Lt. Stiger and Captain Wilson (for implementation of the policy against Hill on November 1, 2007).

As to Hill's allegations that officers used excessive force against him on January 15, 2008, however, the court finds no Eighth Amendment claim. Even after amending his allegations, Hill fails to state facts demonstrating that this incident caused him any lasting discomfort or pain for which he required or sought medical treatment. His self-diagnosis of "constant lockjaw" is conclusory at best. As he fails to show more than de minimis injury resulted from the January 15 incident, the court concludes that the force used was also de minimis and did not rise to the level of an Eight Amendment violation. Hill's allegations that Officer Taylor's methods of gaining control

---

[4]Before bringing a civil action concerning alleged violations in prison, inmates must first exhaust administrative remedies. 42 U.S.C. § 1997e(a). Hill alleges that he attempted to exhaust administrative remedies as to all of his claims, but that prison officials interfered with his attempts to complete the grievance procedures by not responding to his complaints. Taking these allegations in the light most favorable to plaintiff, the court will not dismiss this complaint or any part of it under 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies. See Jones v. Bock, 127 S. Ct. 910, 921 (2007) (finding that plaintiff's failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be raised and proven by the defendant).

over him on that date violated BOP policy do not state any constitutional claim actionable under Bivens. The court will dismiss the excessive force claims related to the alleged events of January 15, 2008 (Claim 5(x)).

Similarly, Hill's allegations against Officer Crum for actions taken on November 1, 2007, do not state any constitutional claim of excessive force. Hill does not allege any specific injury or pain that he suffered from the officers' actions. Therefore, the court will also dismiss the alleged excessive force claim regarding the November 1, 2007 incident (Claim 6).

### B. Deliberate Indifference to Serious Medical Need

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). A medical need is sufficiently serious to satisfy the objective aspect of Estelle "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999); Sheldon v. C/O Pezley, 49 F.3d 1312, 1316 (8th Cir. 1995). The subjective component is met if a prison official was "deliberately indifferent," that is if he "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998). On the other hand, a claim concerning a disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment except in extraordinary circumstances. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Nonmedical prison personnel may rely on the opinion of the medical staff as to the proper course of treatment for an inmate's injuries. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990).

9

The court finds that Hill's medical claims survive screening under § 1915A. He alleges facts stating claim that the nurse saw the tightness of the restraints and his need for his inhaler, but did not correct the situation, and that no medical personnel checked on his condition during the ambulatory restraint period when he suffered pain and asthma symptoms. These allegations state the elements of a deliberate indifference claim, which may go forward against Nurse Meade, as to the specific deprivations, and Medical Health Administrator Roff, as to the policy regarding periodic checks on restrained inmates (Claim 1).

The court also finds that Hill's allegations state possible claims that he has been deprived of adequate medical treatment for his asthma on a day-to-day basis at USP Lee. The court takes judicial notice of the fact that asthma is a serious medical condition that can cause death if untreated. Hill alleges that he is being routinely denied several preventative measures, including those ordered by a doctor. Therefore, the court will allow this medical policy claims to go forward against Nurse Meade and Dr. Allred (Claim 5).

### C. Deliberate Indifference to Hazardous Conditions

The Eighth Amendment also protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337, 346 (1981). In order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective element of a conditions claim, the plaintiff must show that he

10

has sustained a serious or significant mental or physical injury as a result of the challenged conditions. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993).

The court finds that Hill's allegations as amended fail to state the elements of a hazardous conditions claim. He does not show that he suffered any serious physical injury as a result of not being able to flush his toilet at will, using a portable urinal and bedpan, or having bright lights in his cell all day. Although he alleges that the lights caused him headaches, "eye strain," and "hallucinations," he fails to allege that he ever sought or required any medical treatment whatsoever for these conditions. The court will dismiss all of Hill's allegations concerning living conditions in the SHU or in the stripped cell (Claims 2, 3, and 4).

### D. Retaliation & Interference with Grievance Remedies

Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994) . To succeed on his claim, an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. The inmate must come forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained of incident . . . would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995). "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993). Plaintiff must also demonstrate that he suffered some adverse impact or actual injury, more than mere inconvenience, to the exercise of his constitutional

11

right. ACLU of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir.1993). Complaints that offer nothing more than conclusory allegations of retaliation may be summarily dismissed. Adams, 40 F.3d at 74. Inmates have no constitutional right to a prison grievance procedure. Id. at 75.

Under these principles, Hill's allegations fail to state any claim of retaliation. The court specifically advised him that he would need to amend his allegations to state the facts on which he based his claims that certain actions against him were taken in retaliation. Hill alleges merely that various undesirable actions, including false disciplinary charges and false statements on disciplinary reports, occurred after he filed grievances and inmate complaints and that officers seemed to take every chance to interfere with his ability to file such administrative remedies.[5] When filing grievances or inmate complaints, however, Hill was not exercising a constitutionally protected right,[6] as he has no right to participate in a grievance procedure at all. Moreover, he does not allege any specific facts, other than closeness in time, that would tie the adverse, later events to a retaliatory

---

[5] To the extent that Hill is asserting a claim that he was falsely charged, the act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights. See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"). Hill alleges that some of the disciplinary charges of which he complains were expunged or reduced to a lesser charge after the disciplinary proceedings concluded; he does not allege any infirmities in the procedural protections afforded him as to these charges. Thus, the allegedly false charges themselves state no claim actionable under Bivens.

[6] At one point, Hill alleges that after he "threatened to sue" Taylor, the officer made up facts on an incident report. While Hill has a right to access the courts, he does not have a right to bring threats of litigation. Moreover, Hill does not allege that Taylor's actions "chilled" Hill's ability to file a lawsuit if he so desired, particularly as the disciplinary charge and report that Taylor allegedly falsified were expunged and "dismissed," respectively, according to Hill's own account.

12

motive. His conclusory allegations of retalitation in Claims 3-5 must, therefore, be summarily dismissed, pursuant to § 1915A(b)(1).

Similarly, because Hill has no constitutional right to a prison grievance procedure, his allegations that prison officials interfered with his ability to exhaust his grievance remedies do not state any separate constitutional claim actionable under Bivens. Thus, his claims concerning interference with exhaustion of grievance remedies will be dismissed, pursuant to § 1915A(b)(1).[7]

In Claim 6 as added by amendment, Hill claims that on November 1, 2008, after he tried to file inmate complaints against Officers Crum and Martin, they punched and elbowed him, made threats, and then purposely placed his legal materials in the water on his cell floor. While the officers' alleged threats and their treatment of Hill's legal materials are not acceptable, professional behavior, Hill fails to present all the elements of a retaliation claim under Bivens. Hill had no constitutional right to file inmate complaints against these officers, so the officers' actions taken in response to his grievances do not state a separate retaliation claim. Moreover, his other allegations in Claim 6 fail to implicate any separate constitutional right. The court earlier dismissed all allegations of excessive force regarding this incident. The officers' alleged threats also do not state any constitutional claim. See, e.g., Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991) (finding that verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest). Finally, Hill fails to allege that the water damage to his legal materials caused any specific harm to any upcoming litigation efforts. As

---

[7]While Hill's allegations about his troubles in completing the administrative remedies procedures do not state a constitutional claim, that fact does not bar defendants from presenting evidence of non-exhaustion and moving for summary judgment under § 1997e(a) as to any or all of Hill's claims, if they can demonstrate that no genuine issue of material fact remains in dispute.

such, he fails to state any claim that the November 1, 2008, incident interfered to constitutional extent with his ability to access the courts. See Lewis v. Casey, 518 U.S. 343, 351 (1996). For these reasons, the court will dismiss all aspects of Claim 6 for failure to state a claim actionable under Bivens.

### III

In conclusion, the court finds that all of Hill's Bivens claims as amended must be dismissed, pursuant to § 1915A(b)(1), except the following:

    a. alleged use of excessive force on November 1, 2007, pursuant to alleged ambulatory restraints punishment policy, against defendants Lt. Stiger, Warden O'brien, Associate Warden Strickland, and Captain Wilson (Claim 1);[8]

    b. deliberate indifference to serious medical need on November 1, 2007, against Nurse Meade for failing to notify officers that restraints were too tight and for refusing to provide plaintiff with his asthma inhaler and against Defendant Roff and Dr. Allred for policy of not having nurses make regular checks of inmates' medical needs while they are in ambulatory restraints (Claim 1); and

    c. deliberate indifference to plaintiff's serious medical needs for treatment of his chronic asthma condition at USP Lee, against Dr. Allred (Claim 5).

By separate order, the court will direct the clerk to attempt service of process on these remaining defendants at USP Lee County as to these three remaining claims. An appropriate order shall be entered this day.

---

[8] The allegations in support of remaining claims (a) and (b) are found in Hill's Claim 1, while the allegations in support of claim (c) are found in Hill's Claim 5.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 25th day of May, 2008.

/s/ James C. Turk
Senior United States District Judge