CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 30 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| DEMETRIUS HILL, ) | |
| Plaintiff, ) | Civil Action No. 7:08cv00283 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| TERRY O'BRIEN, WARDEN, et al., ) | By: Hon. James C. Turk |
| Defendant. ) | Senior United States District Judge |

Plaintiff Demetrius Hill, a federal inmate proceeding pro se, brings this civil rights action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), with jurisdiction vested under 28 U.S.C. § 1331. The court previously dismissed certain of Hill's claims for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §1915A(b)(1). Still remaining before the court are Hill's claims that Defendants Stiger, O'Brien, Strickland, and Wilson used excessive force against him on November 1, 2007, that Defendants Meade, Roff, and Allred were deliberately indifferent to Hill's serious medical needs that same day, and that Defendant Allred was deliberately indifferent to Hill's serious medical needs over the course of his incarceration at the United States Penitentiary in Lee County, Virginia ("USP Lee"), all in violation of the Eighth Amendment.[1] The Defendants filed a Motion for Summary Judgment,[2] and Hill an opposition brief, thereby making the matter ripe for decision. For the reasons that follow, the court will grant Defendants' Motion for Summary Judgment.

---

[1] In its Memorandum Opinion dismissing certain of Hill's claims under 28 U.S.C. § 1915A(b)(1), the court explained that allegations in support of the first two of Hill's remaining claims are found in Claim 1 of the Complaint. Allegations in support of Hill's third claim are found in Claim 5 of the Complaint. (Dkt. No. 10, n. 8).

[2] The Defendants' Motion is titled a Motion to Dismiss or in the Alternative Motion for Summary Judgment. Because Defendants challenged the Amended Complaint's allegations and attached a number of exhibits, the court will construe the Motion as one for summary judgment. The parties received reasonable and explicit notice of this possibility when the Clerk of the Court issued a Roseboro Notice on August 28, 2008, explaining that "if documents or affidavits outside the pleadings are submitted by either party, any remaining motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Federal Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Federal Civil Procedure." (Dkt. No. 41).

# I.

On November 1, 2007, Hill and his cellmate were living in the Special Housing Unit ("SHU") at USP Lee. At approximately 2:40 p.m., the two inmates allegedly broke a sprinkler head in their cell, resulting in the flooding of the cell and parts of the SHU range. In response to this behavior, and after receiving proper notifications up the chain-of-command,[3] Defendant O'Brien, Warden at USP Lee, granted authorization for the assembly of a "use of force team."[4] O'Brien instructed the use of force team to perform a forced cell move of Hill and his cellmate and to apply ambulatory restraints to the inmates once they were removed from the flooded cell. O'Brien believed this calculated use of force was necessary to prevent further property damage to USP Lee and to ensure the security and good order of the institution.

Before the use of force team entered the cell, corrections officers successfully utilized "confrontation avoidance procedures"[5] to convince Hill and his cellmate to submit to hand restraints. Once the officers secured the inmates' hands behind their backs, they removed Hill and his cellmate from the flooded cell and placed them in a dry holding cell, also located in the SHU. At that time, Hill was able to reposition his handcuffs to the front of his body.

---

[3] Defendant Wilson, Captain at USP Lee, initiated the chain-of-command notifications. Upon realizing that a calculated use of force was necessary, Wilson immediately contacted Defendant Strickland, Associate Warden at USP Lee, and informed him of the circumstances and his recommendation of force. Strickland then notified Defendant O'Brien, Warden at USP Lee, of the same information and sought O'Brien's final approval.

[4] According to representations made by the Defendants, a use of force team ordinarily involves five trained officers, clothed in protective gear, who enter an inmate's cell in tandem, each with a coordinated responsibility for helping achieve immediate control of the inmate. The first team member typically is responsible for controlling and protecting the inmate's head. The second and third team members are responsible for the upper right and upper left extremities, respectively, and the fourth and fifth team members are responsible for the lower right and lower left extremities. There must be one use of force team for each inmate.

[5] The Bureau of Prisons uses "confrontation avoidance procedures" as a means of de-escalating a situation by reasoning with an inmate in an attempt to gain the inmate's voluntary cooperation. As described in 28 C.F.R. § 552.23, "Prior to any calculated use of force, the ranking custodial official (ordinarily the Captain or shift Lieutenant), a designated mental health professional, and others shall confer and gather pertinent information about the inmate and the immediate situation. Based on their assessment of that information, they shall identify a staff member(s) to attempt to obtain the inmate's voluntary cooperation and, using the knowledge they have gained about the inmate and the incident, determine if use of force is necessary."

The corrections officers then contacted the Health Services Department at USP Lee to determine whether there were any medical concerns that would preclude the use of chemical munitions on Hill and his cellmate, if such a response became necessary. Upon receiving the USP medical staff's assessment that there were no such concerns, the use of force team (led by Defendant Stiger) entered the holding cell at 4:25 p.m. They secured Hill and his cellmate in ambulatory restraints—consisting of handcuffs, shackles, and a waist chain, with a "black box" over the handcuffs—and moved the inmates to an "A" range holding cell, also located in the SHU. The move concluded at 4:52 p.m.

Immediately following the inmates' forced move and placement in ambulatory restraints, Defendant Meade, Registered Nurse at USP Lee, performed an injury assessment and initial medical check on Hill. Meade concluded that Hill had no injuries and required no further medical attention. She also noted that Hill's restraints were not too tight, he was not in distress, he did not have shortness of breath, and his blood circulation was within normal limits. Meade and Hill differ as to whether Hill asked for his asthma inhaler at that time.

According to Hill, the corrections officers then left the two restrained inmates in the holding cell for 14 to 16 hours. The cell purportedly had no toilet or sink, it reeked of urine and defecation, and its vent blew cold air non-stop. Hill claims that he began wheezing at some point during the night, but officers and medical staff refused to give him his asthma pump. He also claims that his joints began to stiffen, his arms, wrists, and hands were in constant pain, and by morning, his hands had swelled and his entire body, particularly his upper body, was in pain.

In the days that followed, Defendant O'Brien conducted an "After-Action Review" of the forced cell move and the use of ambulatory restraints on Hill. As part of this process, O'Brien reviewed the confrontation avoidance measures utilized by prison officials, a videotape of the

incident, memoranda submitted by various USP Lee staff members, and medical reports. Taking all of this information into account, O'Brien concluded that the use of force was reasonable and appropriate.

Hill now claims in the instant matter that the actions of USP Lee officials on November 1, 2007 constituted excessive force. As part of this claim, Hill alleges that USP Lee has a standing policy of placing non-combative inmates in ambulatory restraints for lengthy periods of time as a means of corporal punishment and/or to deter misconduct. Hill contends that Defendants O'Brien and Strickland are ultimately responsible for the policy and that Defendants Stiger and Wilson carried it out against him on November 1, 2007.

Hill also claims that USP Lee medical staff members were deliberately indifferent to his medical needs on November 1, 2007. Specifically, Hill alleges that Defendant Meade failed to notify officers that Hill's restraints were too tight and refused to provide him with an asthma inhaler despite his requests and wheezing. Hill further claims that Defendants Roff and Allred are responsible for failing to implement a policy at USP Lee under which medical staff (as opposed to correctional officers) are required to make periodic checks on an inmate's wellbeing when that inmate is placed in ambulatory restraints.

Finally, Hill claims that Defendant Allred was deliberately indifferent to his serious medical needs during the entire length of his incarceration at USP Lee for inadequately treating his asthma. Hill contends that Dr. Allred failed to perform appropriate tests, failed to provide the necessary medicinal and breathing treatments, and failed to ensure that a nurse is always present at the facility to assist Hill if he should happen to have an asthma attack. According to Hill, each of these abuses violated his Constitutional rights under the Eighth Amendment.

## II.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). "When a motion for summary judgment is properly made and supported . . . [by affidavits], an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball. 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

## III.

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1955 ("PLRA") requires prisoners to fully exhaust all available administrative remedies before filing a lawsuit challenging prison conditions. In particular, Section 1997e(a) of the PLRA states as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This statutory obligation is mandatory regardless of the remedy sought, Booth v. Churner, 532 U.S. 731, 740-41 (2001), and courts have no discretion to excuse

noncompliance in actions to which the PLRA applies. Porter v. Nussle, 534 U.S. 516, 524 (2002).[6] As rationale for such a rigid prerequisite, the United States Supreme Court has explained that the PLRA "attempts to eliminate unwarranted federal-court interference with the administration of prisons, and . . . 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Woodford v. Ngo, 548 U.S. 81, 93 (2006) (quoting Porter, 534 U.S. at 525).[7]

To satisfy the PLRA's exhaustion requirement, a prisoner must "proper[ly] exhaust" all administrative remedies available. Woodford, 548 U.S. at 93. Proper exhaustion requires a "complet[ion] [of] the administrative review process in accordance with the applicable procedural rules, including deadlines." Id. at 88, 93. It also requires a carrying out of the administrative grievance process in its entirety, including appealing any denial of relief through any appellate levels of review that are available. See Booth, 532 U.S. at 738-41 (2001).

Pursuant to 28 C.F.R. § 542.10, et seq., the Bureau of Prisons has established an administrative remedy procedure through which an inmate may seek a formal review of an issue or complaint relating to his confinement. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within twenty calendar days of the date of the occurrence that constitutes the basis for the complaint. See 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response to the formal complaint, he may appeal, using the appropriate form, to the Regional Office Director within twenty calendar days of the Warden's response. See 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, he may appeal the Regional Office's response to the General Counsel at the Central Office. See id.

---

[6] Failure to exhaust administrative remedies is an affirmative defense, see Jones v. Bock, 549 U.S. 199, 215-16 (2007), which the Defendants have properly raised in this case.

[7] Courts "appl[y] § 1997e(a) in the same manner to both § 1983 actions and Bivens actions." Truett v. Shaw, 17 Fed. App'x 123, 124 (4th Cir. 2001) (per curiam) (citing Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000)).

The inmate must file this final appeal within thirty calendar days of the Regional Office response. See id.

In the instant case, a review of SENTRY (the Bureau of Prisons' computerized record system) reveals that Hill has filed approximately 229 administrative remedies during his years of incarceration. Hill filed 14 of those remedies while housed at USP Lee, two of which relate to his claim of excessive force on November 1, 2007. Defendants concede in their Motion for Summary Judgment that Hill has fully exhausted his administrative remedies as to that issue. With respect to Hill's claims that Defendants Meade, Roff, and Allred were deliberately indifferent to Hill's serious medical needs, however, Hill has filed no administrative remedies.

Hill attempts to excuse this failure to exhaust by alleging that he attempted to pursue administrative remedies but that USP Lee staff members (his counselor "Puliver," in particular) refused to provide him with the proper forms. Hill also alleges that USP Lee staff members ignored and/or destroyed many of the grievance forms that he was able to submit. Hill provides no evidence to support these claims,[8] however, and the court finds that Hill's SENTRY records belie his allegations entirely. Specifically, the fact that Hill was able to file, and subsequently appeal, his grievance regarding the alleged excessive force on November 1, 2007 proves that the administrative remedy process was readily available to him during his time at USP Lee.

---

[8] In an attempt to support his argument, Hill provides a sworn affidavit from a fellow inmate at USP Lee, James T. Williams. In that affidavit, Williams recalls that a certain USP Lee staff member ("Laloude") has denied him administrative remedy forms on numerous occasions. Williams also states that many of his administrative remedy forms have gone unanswered. The court finds this evidence irrelevant, however, because Williams fails to provide any connection whatsoever to Hill and/or his claims. For example, Williams does not state that he has witnessed USP Lee staff members denying Hill administrative remedy forms. There is also no indication that Hill ever requested that the named USP staff member ("Laloude") provide him with administrative remedy forms.

Even if the court accepted Hill's allegations as true, though, Hill nevertheless fails to offer any evidence to prove that that there were no other sources for obtaining grievance forms[9] and/or that he was unsuccessful in filing his grievances regarding the deliberate indifference to a serious medical need without a form.[10] In the absence of such evidence, the court may not excuse Hill's failure to exhaust his administrative remedies, see Jones v. Smith, 266 F.3d 399, 400 (6th Cir. 2001) (prisoner's bare allegation that a grievance counselor refused to give him an administrative remedy form was not sufficient reason to excuse a failure to exhaust), and thus the claims alleging deliberate indifference to a serious medical need must be dismissed.

## B. Excessive Force

The Eighth Amendment generally prohibits the use of unnecessary and wanton force on inmates. Whitley v. Albers, 475 U.S. 312, 319 (1986). Whether a particular use of force violates this proscription depends on both subjective and objective considerations. See Wilson v. Seiter, 501 U.S. 294, 302 (1991). "Specifically, Eighth Amendment analysis necessitates inquiry as to whether a prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

The "core judicial inquiry" of the subjective component of an excessive force claim is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); accord

---

[9] Hill states in his Complaint that a different counselor ("R. Mullins") gave him "around eight to ten" of the forms and "each time [Hill] would see Mullins [he would] give the old [completed grievance] forms [to Mullins] and request more." (Compl. at 7). Mullins then "turned several of these [grievance forms] in to (sic) the administrator responsible" and gave the rest of the forms to Hill's counselor. (Compl. at 7). In addition to Mullins, Hill states that he was able to get administrative remedy forms from "other unit teams" as well. (Compl. at 8).

[10] Hill provides multiple examples in his Complaint of occasions when he was successful in bringing grievances without the proper forms. For instance, Hill states that he was able to submit several grievances directly to Defendant Strickland. (Compl. at 8). He also states that he was able to write to Duty Officer Giddings directly and that Ms. Giddings responded that "she [had] emailed [the] unit team about [Hill's] complaint." (Compl. at 8).

Whitley, 475 U.S. at 320-21. In making this determination, a court must balance several relevant factors. Williams, 77 F.3d at 762. These factors include: "[1] the need for application of force, [2] the relationship between that need and the amount of force used, [3] the threat reasonably perceived by the responsible officials, and [4] any efforts made to temper the severity of a forceful response." Id. (citing Hudson, 503 U.S. at 7). The absence of serious injury is relevant, but not dispositive, in this analysis as well, id. (citing Hudson, 503 U.S. at 7), as is "the principle that 'prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Hudson, 503 U.S. at 7.

The objective component of an excessive force claim, alternatively, is "contextual and responsive to 'contemporary standards of decency.'" Id. at 9 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (U.S. 1976)). When prison officials "maliciously and sadistically" use force to cause harm, they violate contemporary standards of decency regardless of whether significant injury results or not. Id. This "is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action," however. Id. (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (quoting Whitley, 475 U.S. at 327). Thus, "absent the most extraordinary circumstances," an inmate cannot prevail on an excessive force claim unless he proves more than de minimis pain or injury. Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994).

In the instant case, a review of the pertinent records reveals that Hill cannot satisfy either of these Eighth Amendment considerations. Taking the latter, objective component first, Hill fails to offer <u>any</u> evidence to show injury caused by the Defendants' November 1, 2007 use of force. At most, Hill's bare allegations indicate that, while he was in ambulatory restraints, Hill's "joints began to stiffen," parts of his body were in "constant pain," and his "hands began to swell." (Compl. at 4). These self-serving claims, however, without objective corroboration, are insufficient to avoid summary judgment. See Fulks v. Metts, 2007 U.S. Dist. LEXIS 51751, at *12-17 (D.S.C. July 17, 2007) (denying a prisoner's claims of injury when the only evidence such injury was the prisoner's "unsupported self-serving affidavit"); see also Larken v. Perkins, 22 Fed. Appx. 114, 115, n. * (4th Cir. October 29, 2001) (noting that the district court properly found a party's "own, self-serving affidavit[s] containing conclusory assertions and unsubstantiated speculation . . . insufficient to stave off summary judgment."); National Enterprises, Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000) ("Marvin J. Barnes' self-serving affidavit describing the content of the repurchase agreements is not enough to defeat National's motion for summary judgment."); Evans v. Technologies Application & Service Co., 80 F.3d 954, 962 (4th Cir.1996); De Leon v. Saint Joseph Hosp., Inc, 871 F.2d 1229, 1236 (4th Cir.1989) ("Unsupported allegations . . . do not confer talismanic immunity from Rule 56."); White v. Boyle, 538 F.2d 1077, 1079 (4th Cir. 1976).

Even assuming that Hill did suffer from the pain and swelling he alleges, the injuries were, at most, <u>de minimis</u> and did not amount to a constitutional violation. Cf. Melvin v. North Carolina Dept. of Corrections, No. 95-6538, 1995 WL 494893 (4th Cir. Aug. 21, 1995) (cuts and abrasions <u>de minimis</u>); Norman, 25 F.3d 1263-64 (<u>de minimis</u> injuries where cell keys hit inmate on hand causing swelling); Taylor v. McDuffie, 155 F.3d 479, 484 (4th Cir. 1998) ("temporary

swelling and irritation is precisely the type of injury this Court considers de minimis"); Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997) (pain from being tightly handcuffed for six hours, welt on face from slap and fears for safety were de minimis injuries); Adams v. Compton, 7:04-cv-00258, 2005 WL 2006975 (W.D. Va. Aug. 17, 2005) (where inmate claimed that officers kicked him and placed him in a choke hold, court found that the inmate's injuries to be de minimis).

Hill's medical records—or the absences thereof—overwhelmingly support such a conclusion. See Saunders v. Buckner, 2008 U.S. Dist. LEXIS 66852, at * 23 (E.D. Va. August 28, 2008) (citing Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998)) (the absence of medical documentation of injuries weighs heavily against a finding of excessive force). Notably, the "Inmate Injury Assessment and Followup" report completed immediately following the use of force clearly states that Hill suffered "no injuries," (Def's Mot. for Summ. J., Ex. 3, Attach. A), and Hill did not seek medical treatment after his release from ambulatory restraints nor did he complain about pain in his joints, wrists, or hands. Hill's next visit with USP Lee medical staff occurred on November 14, 2007, during which Dr. Allred evaluated Hill only for his asthma. (Def's Mot. for Summ. J., Ex. 7, Attach. A). Hill complained of cough, wheezing, and shortness of breath, which he attributed to no longer taking Prednisone,[11] but there was no mention of the November 1, 2007 use of force, the ambulatory restraints, and/or any resulting injuries. (Def's Mot. for Summ. J., Ex. 7, Attach. A).

Given the de minimis nature of Hill's injuries, the Defendants' use of force violated Hill's Eighth Amendment rights only if the force was "repugnant to the conscience of mankind

---

[11] Prednisone is a synthetic glucocorticoid derived from cortisone, administered orally as an anti-inflammatory and immunosuppressant in a wide variety of disorders such as asthma. Dorland's Illustrated Medical Dictionary 1500 (30th ed. 2003).

or the pain itself [was] such that it can properly be said to constitute more than de minimis injury." Norman, 25 F.3d at 1263. This court has found that ambulatory restraints do not constitute excessive force per se, however, see Teal v. Braxton, 7:04-CV-00406, 2006 U.S. Dist. LEXIS 56483 (W.D. Va. Mar. 17, 2006), adopting 2006 U.S. Dist. LEXIS 7417 (W.D. Va., Feb. 24, 2006),[12] and there is no evidence in the record to suggest that prison officials applied Hill's ambulatory restraints in a manner that would be repugnant to the conscience of mankind and/or that would lead to more than de minimis pain or suffering. To the contrary, the record shows that USP Lee staff assessed Hill's condition following his placement in restraints (both initially and every fifteen minutes thereafter, see Def's Mot. for Summ. J., Ex. 2, Attach. B),[13] and Defendant Meade determined that Hill required no medical attention, his circulation was within normal limits, and the restraints were not excessively tight. (Def's Mot. for Summ. J., Ex. 3). Based on this evidence, the court cannot conclude that the ambulatory restraints applied here constitute the "extraordinary circumstances" necessary to satisfy the objective component of an excessive force claim with no apparent injuries. Norman, 25 F.3d 1263.

Turning next to the subjective component of an excessive force claim, Hill offers no evidence to suggest that the Defendants' November 1, 2007 use of force "was applied . . . maliciously and sadistically to cause harm," Hudson, 501 U.S. at 7, or that USP Lee officials use ambulatory restraints as a means of corporal punishment and/or to deter misconduct. In the absence of such evidence, Hill simply argues that his behavior, both before and during the restraint period, did not justify a use of force. Particularly, Hill claims that there is no evidence

---

[12] The court also notes that the Fourth Circuit has upheld other, more aggressive forms of restraint. See Williams, 77 F.3d at 763 (upholding four-point restraints).

[13] USP Lee staff members checked on Hill's general welfare every fifteen minutes for the duration of his placement in ambulatory restraints. (Def's Mot. for Summ. J., Ex. 2, Attach. B). The "Fifteen Minute Restraint Check Forms" filled out by those USP Lee staff members indicate that Hill was laying down, sitting, and walking around during the time he was restrained and note no signs of pain and/or distress. (Def's Mot. for Summ. J., Ex. 2, Attach. B).

in the record to prove that he or his cellmate broke the sprinkler head in their cell (as opposed to it malfunctioning), and thus the ambulatory restraints applied to him must have "had no legitimate pen[o]logical purpose and [were] [applied] as punishment, abuse, and a deterrence to others." (Pl's Resp. in Opp'n to Def's Mot. for Summ. J. at 3).

This line of reasoning does not persuade the court. In a light most favorable to Hill, the evidence in the record indicates the following: A sprinkler head broke in Hill's cell, resulting in the flooding of the cell and the SHU range; confrontation avoidance procedures then were necessary so prison officials could relocate Hill and his cellmate to a dry holding cell; once in the cell, Hill successfully repositioned his handcuffs from a proper behind-the-back placement to the front of his body. Hill had a lengthy discipline history within the Bureau of Prisons at the time of this incident, including threatening bodily harm, fighting, assaulting without serious injury, possessing a dangerous weapon, making sexual proposals, destruction of property, and interfering with security devices. (Def's Mot. for Summ. J., Ex. 1, Attach. D). Based on the totality of these circumstances, USP Lee officials determined that a use of force was "reasonable and appropriate" and "necessary to prevent further property damage and to ensure the security and good order of the institution." (Def's Mot. for Summ. J., Ex. 2, 4, 5, & 6). As an official policy, however, USP Lee staff members "[do] not place inmates in restraints for punishment or as a deterrent," and "restraints are used in accordance with [Bureau of Prisons] policy[14] and

---

[14] 28 C.F.R. § 552.20 ("Use Of Force And Application Of Restraints On Inmates") provides as follows:

> The Bureau of Prisons authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed. When authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others, to prevent serious property damage and to ensure institution security and good order. Staff are authorized to apply physical restraints necessary to gain control of an inmate who appears to be dangerous because the inmate:
>
> (a) Assaults another individual;
> (b) Destroys government property;
> (c) Attempts suicide;

[only] when necessary to prevent an inmate from harming staff or other inmates, to prevent property damage, and to regain or maintain the order and security of the institution." (Def's Mot. for Summ. J., Ex. 2, 4, 5, & 6).

On this record, the court concludes that the Defendants' November 1, 2007 use of force was "a good-faith effort to maintain or restore discipline." Hudson, 503 U.S. at 7. In coming to this determination, the court finds support in each of the factors identified by the Fourth Circuit as relevant to the subjective component of an excessive force claim. See Williams, 77 F.3d at 762. Mainly, the decision to use force under these circumstances was reasonable, and the relationship between the need for force and the (minimal) amount of force used was responsible and in accordance with Bureau of Prisons official policy.[15] Also relevant to the court's decision is the fact that Hill did not suffer any injuries as a result of the use of force. Hill undoubtedly endured some discomfort—even pain—as a result of his placement in ambulatory restraints, but granting the USP Lee officials the "wide-ranging deference" to which they are entitled in implementing policies for the preservation of order and security in the prison, Hudson, 503 U.S.

---

(d) Inflicts injury upon self; or
(e) Becomes violent or displays signs of imminent violence.

This rule on application of restraints does not restrict the use of restraints in situations requiring precautionary restraints, particularly in the movement or transfer of inmates (e.g., the use of handcuffs in moving inmates to and from a cell in detention, escorting an inmate to a Special Housing Unit pending investigation, etc.).

[15] Bureau of Prisons Policy Number P5566.06 states in part as follows:

Ambulatory restraints should initially be used to restrain an inmate if deemed appropriate for the situation. An example of such situations is when an assaultive incident occurred quickly and ended, and the inmate is no longer displaying signs of violence or aggressiveness. Using ambulatory restraints for a period of time may be appropriate for protecting staff and others, pending an assessment by staff to determine whether the inmate has regained self-control.

Staff should look for a pattern of non-disruptive behavior over a period of time as an indication the inmate has regained self-control and is no longer a disruptive threat.

Bureau of Prisons Program Statement P5566.06, Use of Force and Application of Restraints, p. 11, available at http://bop.gov/policy/progstat/5566_006.pdf.

at 7, the court does not find that the actions taken by the Defendants rise to a level of cruel and unusual punishment in violation of the Eighth Amendment. See Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) ("[W]hen prison security measures are taken in response to an uprising or prison disturbance, the courts cannot always expect a perfectly measured response. "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." (quoting Whitley, 475 U.S. at 319)). Nor does the court find that the Defendants' actions of November 1, 2007 amount to evidence of a policy (official or unofficial) at USP Lee under which prison officials use ambulatory restraints as a means of corporal punishment and/or to deter misconduct. Accordingly, because Hill fails to satisfy this (and the objective) component of an excessive force claim, the court must grant Defendants' Motion for Summary Judgment in part as to this claim.

## IV.

In conclusion, for the reasons stated above, the Defendants' Motion for Summary Judgment will be granted in part, to the extent that it concerns Hill's Eighth Amendment excessive force claim. With respect to all other remaining claims, the court finds that Hill has failed to exhaust his available administrative remedies properly before commencing this action, and thus the claims must be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a). An appropriate order shall issue this day.

The Clerk of Court is directed to strike the matter from the court's active docket and to send a copy of this memorandum opinion and accompanying final order to Plaintiff and counsel of record for the Defendants.

**ENTER**: This 20th day of March, 2009.

/s/ James C. Turk
Senior United States District Judge