CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 04 2011

JULIA C. DUDLEY, CLERK
BY: ~~~~~~~~~
      DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| DEMETRIUS HILL, )<br><br>Plaintiff, )<br><br>v. )<br><br>TERRY O'BRIEN, et. al., )<br><br>Defendants. ) | Civil Action No. 7:08cv00283<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. James C. Turk<br>Senior United States District Judge |

Plaintiff Demetrius Hill (Hill), a federal inmate proceeding pro se, brings this civil rights action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), with jurisdiction vested under 28 U.S.C. § 1331. In his complaint, Hill alleges that Defendants, federal prison officials, (1) subjected him to cruel living conditions due to the bright fluorescent lights in his cell; (2) retaliated against him because Hill threatened to sue the prison officers; (3) interfered with his right to file grievances; (4) used excessive force against him on November 1, 2007; (5) were deliberately indifferent to his serious medical need after the incident on November 1, 2007; (6) failed to adequately treat his chronic asthma; and (7) used excessive force against him on January 15, 2008. Defendants filed a motion to dismiss, or in the alternative a motion for summary judgment, and Hill filed an opposition brief, making the matter ripe for decision.

Upon review of the parties' arguments and the case record, the Court finds that the Defendants' motion to dismiss must be **GRANTED** in part and **DENIED** in part.

1

# I. Procedural History

In April 2008, Hill filed a pro se action pursuant to the doctrine announced in Bivens against various prison officials at United States Penitentiary, Lee, Virginia (USP Lee). Hill alleged various prison officials at USP Lee violated his constitutional rights by using excessive force against him, subjecting him to cruel and unusual conditions of confinement due to the bright fluorescent lights in his cell, retaliating against him, obstructing his ability to file administrative grievances, and denying him adequate medical care. In May 2008, this Court dismissed Hill's complaint for failure to state a claim as to all but one of Hill's excessive force claims and medical indifference claims. By a subsequent order, this Court granted summary judgment to the defendants on Hill's remaining claims.

Upon appeal, the United States Court of Appeals for the Fourth Circuit vacated this Court's summary judgment and dismissal of Hill's excessive force claims and remanded these claims back to this Court for consideration in light of Wilkins v. Gaddy, 130 S. Ct. 1175 (2010). The Fourth Circuit also vacated this Court's summary judgment of Hill's medical claims for failure to exhaust administrative remedies and remanded the issue back to this Court. The Fourth Circuit affirmed this Court's dismissal of Hill's remaining claims. Hill v. O'Brien, 387 Fed. App'x 396, 401 (4th Cir. 2010).

Because the Fourth Circuit affirmed this Court's dismissal of Hill's cruel living conditions and retaliation claims, this Court maintains its earlier dismissal and will not address these claims.

# II. Factual Background

Hill's claims are based on the following alleged sequence of events at USP Lee:

## A. November 1, 2007

On November 1, 2007, Hill and his cellmate were living in the Special Housing Unit (SHU) at USP Lee. Defendants claim the two inmates broke a sprinkler head in their cell, resulting in the flooding of the cell and parts of the SHU range. As a result, O'Brien, warden at USP Lee, granted authorization for the assembly of a "use of force team." O'Brien instructed the use of force team to perform a forced cell move of Hill and his cellmate.

Before the use of the force team entered the cell, corrections officers successfully utilized "confrontation avoidance procedures" to convince Hill and his cellmate to submit to hand restraints. Hill was left in hand restraints for forty-five minutes before he was removed from the flooded cell and placed in a dry holding cell, also located in SHU. Hill was then placed in new clothes and ambulatory restraints.

After being placed in the ambulatory restraints, Hill was assessed by one of the defendants, Defendant Nurse Meade. Hill alleged that he told the nurse the ambulatory restraints were too tight, but she did nothing about it. According to Defendant Meade, she checked Hill's circulation and found it to be within normal limits. She also found no other injuries. Additionally, Hill alleges that he requested his asthma pump, but she ignored his request. Hill then claims he was restrained in the ambulatory restraints for at least sixteen hours and kept in a room with another restrained prisoner that had no toilet, no sink, and had a vent that blew non-stop cold air. Hill also claims the room smelled of urine and defecation. Further, Hill alleges he began wheezing during the night and was in constant pain, but that Defendant Meade had refused to give him his asthma pump and no periodic checks were done by any medical staff throughout the night.

In a motion to amend (Dkt. No. 6), Hill added new defendants, Officers Crum and Martin. Hill alleges that before he was placed into the dry holding cell on November 1, 2007, Officer Crum came into his cell and punched him in the ribs, elbowed him in the side of the head, and screamed something to the effect of "break another sprinkler, I'll break your neck." Hill further alleges Officer Crum told Officer Martin to go into Hill's cell and "handle business." Hill states Martin then came into the holding cell and took Hill's legal papers and books from the plastic bag Hill wrapped them in and then purposely placed them all onto the wet floor. Hill alleges that Officers Crum and Martin were retaliating against him because Hill had repeatedly attempted to file complaints against the officers for harassment, verbal abuse, constant denial of outdoor recreation, and other abuses.

Defendants assert that Defendant Crum was not part of the use of force team called upon during the November 1, 2007 incident. While Defendant Crum states that he did not allow Hill to bring his property out of the cell after the flooding, he denies assaulting Hill and making the comments Hill alleges or any threatening remarks. Additionally, Defendant Crum claims he had a good rapport with Hill.

### B. January 15, 2008

On January 15, 2008, Hill alleges Officer Taylor maliciously and sadistically attacked him without any provocation. He asserts that Officer Taylor forcibly grabbed and dug his fingers into Hill's arm which caused Hill severe pain. Hill alleges that when he tried to pull his arm away, Office Taylor squeezed and dug his fingers into Hill's arm while pushing Hill through a range gate. According to Hill, Officer Taylor then grabbed the back of Hill's head and attempted to push it directly into the concrete floor. Hill claims that once on the floor, an officer, who Hill

4

believes was Officer Taylor, kept digging his fingers into the pressure points behind Hill's jaw and under Hill's ear causing constant pain. Officer Taylor then wrote Hill an incident report for Refusing an Order and Threatening, which was later expunged. Hill opines that there was no justification for the use of force and that it was only used to inflict pain maliciously. Further Hill claims Officer Taylor deliberately lied in the incident report as a form of retaliation against Hill.

According to Defendants, Hill wanted to go to outside recreation, but was on medical idle which prohibited him from going outside when the temperature was below forty degrees. When the officers advised Hill of this, Hill became upset and Defendant Taylor and another officer had to place him up against the grill of the SHU range to gain control of him. At that point, Defendants allege Hill because even more upset and disruptive to the point the officers had to place him on the ground. Defendant Taylor issued an incident report to Hill for Refusing an Order and Threatening. Defendants contend that the use of force against Hill was necessary and reasonable because Defendants needed to gain control of Hill, were aware of Hill's lengthy discipline history, perceived Hill's actions as a threat, and wanted to prevent Hill from inciting other inmates.

### III. Standard of Review

When a motion to dismiss is submitted and either party submits documents or affidavits outside the pleadings, the Court must consider it a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. Pro. 12(d).[1] The Respondent's motion to dismiss must be treated as a motion for summary judgment. Defendants submitted eight

---

[1] The parties received reasonable and explicit notice of the Court's intention to convert the Respondent's motion to dismiss into one for summary judgment. The Clerk of the Court issued a Roseboro Notice on October 19, 2010 explaining that "if documents or affidavits outside the pleadings are submitted by either party, any motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." (Dkt. No. 36).

additional affidavits with their motion to dismiss. (Dkt. No. 35). In turn, Hill submitted one

exhibit and affidavit with his opposition brief to Defendants motion to dismiss. (Dkt. No. 39).

Upon motion for summary judgment, the Court must view the facts, and the inferences to

be drawn from those facts, in the light most favorable to the party opposing the motion. United

States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Summary judgment is appropriate "if the

movant shows that there is no genuine dispute as to any material fact that the movant is entitled

to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material

fact exists if reasonable jurors could find by a preponderance of the evidence that the non-

moving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

252 (1986).

## IV. Hill's Claims

Hill's claims are made under Bivens v. Six Unknown Named Agents of Federal Bureau of

Narcotics, 403 U.S. 388 (1971). In Bivens, the Supreme Court held that damage suits could be

maintained against federal officials for violations of the Constitution. Id. at 392. An action

under Bivens is almost identical to an action under 42 U.S.C. § 1983, except that the former is

maintained against federal officials for violation of constitutional rights, while the latter is

against state officials. See Carlson v. Green, 446 U.S. 14, 24-25 (1980). Case law involving

§ 1983 claims is applicable in Bivens actions and vice versa. See Farmer v. Brennan, 511 U.S.

825 (1994).

### A. Exhaustion

Under the Prisoner Litigation Reform Act (PLRA):

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal Law, by a prisoner

confined in any jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Prisoners must exhaust all "available" remedies even when the relief

sought cannot be granted in the administrative process. Woodford v. Ngo, 548 U.S. 81, 85

(2006). However, an inmate cannot be required to exhaust if the administrative remedies are not

"available" to him. Kaba v. E.A. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).

The Fourth Circuit, in Hill's previous action, concluded that there is a genuine issue of

material fact as to whether Defendants hindered Hill's ability to exhaust his administrative

remedies relating to Hill's medical claims. Hill v. O'Brien, 387 Fed. App'x 396, 401, 2010 WL

2748807, at *1 (4th Cir. 2010). Hill argues that his counselor denied him BP-8 forms, destroyed

BP-8 forms Hill had submitted, and failed to respond to his submitted forms after requiring Hill

to wait until he received a response to a claim before filing a new one. Because this Court must

take the evidence in the light most favorable to Hill, this Court finds that Hill was prevented

from taking the necessary steps to exhaust his remedies. Thus, this Court will not dismiss Hill's

claims for failure to exhaust and instead will proceed to the merits of each of Hill's claims.

## B. Interference Filing Grievances

Hill claims Defendants denied his right to seek redress repeatedly while at USP Lee by

interfering with his ability to file grievances. He alleges that counselors denied him BP-8 forms,

destroyed BP-8 forms Hill had submitted, and failed to respond to his submitted forms after

requiring Hill to wait until he received a response to a claim before filing a new one.

Access to grievance procedure is not a constitutionally protected right. Adams v. Rice, 40

F.3d 72, 75 (4th Cir. 1994); Smith v. Ray, 36 Fed. App'x 99, 2002 WL 1162396, at *1 (4th Cir.

June 3, 2002) (unpublished opinion). Therefore, this Court finds Hill's interference to filing

grievances claim must fail and grants Defendants' motion for summary judgment as to this claim.

## C. November 1, 2007: Excessive Force

The Eighth Amendment prohibits prison officials from using force unnecessarily and wantonly to inflict pain on prisoners. Whitley v. Albers, 475 U.S. 312, 319 (1986). When considering a prisoner's Eighth Amendment claim, the Court must consider a dual inquiry: (1) the objective nature of the force used and the resulting harm and (2) the subjective intent of the officers. Hudson v. McMillian, 503 U.S. 1, 8 (1992). The objective component of the inquiry is "contextual and responsive to 'contemporary standards of decency.'" Id. (quoting Estelle, 429 U.S. at 103). However, "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9. Thus, the core judicial inquiry turns on whether the force applied by the prison officials was "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6-7. In making this determination, the Court must balance such factors as the need for the application of force, the relationship between the need and the amount of force actually applied, and the extent of injury inflicted. Id. at 7.

While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010). Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 ("The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, at 1178. A de minimis uses of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant

8

to the conscience of mankind." Id. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.

Hill alleges Defendants used excessive force against him on November 1, 2007, in violation of his Eighth Amendment because (1) he was confined in ambulatory restraints for sixteen hours, (2) Defendant Crum assaulted Hill in his cell without any justifiable provocation, and (3) Defendant Martin verbally harassed Hill and purposely destroyed Hill's legal papers and books.

1.  Ambulatory Restraints

Hill claims that he was confined in ambulatory restraints for at least sixteen hours in a multi-purpose room with no sink, toilet, or bed. Defendants assert Hill broke the sprinkler in his cell and as a result, they placed him in restraints to prevent further destruction of property to ensure the safety of inmates and staff, and to regain institution security and good order. However, Hill denies breaking the sprinkler and claims after the sprinkler defaulted, he was held in hand restraints and acted completely calm and non-combative before being placed in ambulatory restraints.

Hill states that a prisoner in ambulatory restraints is placed in iron handcuffs, shackles, a waist chain, and has a black box placed over the handcuffs. Hill argues that placing a non-combative prisoner in ambulatory restraints for sixteen hours violates the Eighth Amendment against excessive force. He further alleges that he did not commit any misconduct during the time he was restrained to warrant the need for continued ambulatory restraints. Hill also claims that due to the ambulatory restraints, his joints began to stiffen and his arms, wrists, and waist were in constant pain.

The conditions and emotional stress Hill faced in ambulatory restraints are not the type of temporary discomforts and inconvenience that support an Eighth Amendment violation. The court in Holley v. Johnson, No. 7:08-CV-00629, 2010 WL 2640328 (W.D. Va. June 30, 2010), found ambulatory restraints imposed on Holley for forty-eight hours was not excessive force and reasoned "to the extent the restraints make [changing positions, stretching his muscles, eating his meals, sleeping, or using the toilet] less comfortable and more difficult to execute effectively, they fall squarely among those conditions of prison life that are 'restrictive and even harsh' without rising to the level of unconstitutional punishment." Id. at *14. Therefore, under the objective prong of an excessive force claim, the Holley court found a temporary limitation of prisoners due to ambulatory restraints which "causes the inmate no physical injury other than temporary discomfort and embarrassment, simply cannot qualify as a use of force that is 'repugnant to the conscience of mankind.'" Id. at *14 (internal citations omitted). While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," the absence of a serious injury is not irrelevant. Wilkins, 130 S. Ct. at 1178. Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 ("The absence of serious injury is therefore relevant to Eighth Amendment inquiry, but does not end it.").

In this case, not only did Hill fail to prove significant injury, but he also failed to show the nature of force the ambulatory restraints imposed on him and their temporary application amounted to a use of force "repugnant to the conscience of mankind." Ambulatory restraints are designed and applied to limit a prisoner's movement but not to inflict any measure of physical harm on him. Holley, 2010 WL 2640328, at *14. In Hill's opposition brief, he even states that he was able to move around while in the ambulatory restraints. Although these restraints may be

uncomfortable, ambulatory restraints do not totally prevent a restrained prisoner from changing positions, stretching his muscles, sleeping, or eating his meals. See Jackson v. Morgan, 19 Fed. App'x 97, 2001 WL 1116275, at *4-5 (4th Cir. Sept. 24, 2001) (unpublished opinion); Holley v. Johnson, No. 7:08-CV-00629, 2010 WL 2640328, at *14 (W.D. Va. June 30, 2010). Reviewing the facts in a light most favorable to Hill, this Court finds no reasonable jury could infer the use of ambulatory restraints on Hill rises to the level of force that is "repugnant to the conscience of mankind." Therefore, this Court grants Defendants' motion for summary judgment as to this claim.

2. Excessive Force by Defendant Crum

Hill claims Defendant Crum maliciously and sadistically assaulted him in his cell prior to Hill being moved to the dry cell by the use of force team. Hill alleges Defendant Crum came into his cell and punched Hill in his ribs and elbowed Hill on the side of the head while Hill's hands were cuffed behind his back. Hill further alleges Defendant Crum yelled something to the effect of, "break another sprinkler, I'll break your neck." Hill asserts that he did not break the sprinkler head and that he was completely calm and non-combative when Defendant Crum entered his cell. In contrast, Defendants assert Defendant Crum never made the comments Hill alleges or any threatening remarks, and Defendant Crum denies assaulting Hill on November 1, 2007. This Court must view the facts in favor of the non-moving party, Hill. Because there is a genuine issue of material fact as to whether there was any need for the force, this Court denies Defendants' motion for summary judgment as to this claim.

3. Excessive Force by Defendant Martin

Hill alleges that during the time of the assault by Defendant Crum, Defendant Martin took all of Hill's legal papers and books and purposely placed them into the water on the cell floor. Defendant Martin then stated to Hill, "do you really believe you'll find you'll find any justice out here boy, look around where you at." Hill does not allege Defendant Martin took part in the assault with Crum on November 1, 2007 other than putting Hill's legal papers and books onto the wet floor.    Therefore, this Court finds Hill provides no sufficient evidence for a jury to find that Defendant Martin's actions rose to the level of "unnecessary and wanton infliction of pain" and this Court grants Defendants' motion for summary judgment as to this claim against Defendant Martin. Whitley, 475 U.S. at 320.

4.  Retaliation by Defendants Crum and Martin

Hill alleges that Defendants Crum and Martin retaliated against him because Hill had repeatedly attempted to file complaints against the officers for harassment, verbal abuse, constant denial of outdoor recreation, and other abuses. Because this Court previously dismissed Hill's retaliation claim arising from the November 1, 2007 incident, which was subsequently affirmed by the Fourth Circuit, this Court will not address Hill's retaliation claim.

D.  November 1, 2007: Deliberate Indifference to Serious Medical Need

A prison official's indifference to a serious medical need violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). A constitutional claim in this context involves an objective component and a subjective component. The objective component is met if the deprivation is "sufficiently serious." Farmer, 511 U.S. at 834. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is

12

so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999). The subjective component is met if a prison official is "deliberately indifferent," that is if he "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d. 164, 168-69 (4th Cir. 1998). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment except in extraordinary circumstances. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Hill alleges Defendants Mead, Roff, and Allred were deliberately indifferent to his serious medical needs because (1) Defendant Meade failed to provide Hill with his asthma pump or advise the officers that the restraints were too tight, (2) Defendant Roff failed to assign medical staff to conduct periodic checks on Hill and evaluate Hill once the restraints were removed, and (3) Defendant Allred failed to leave any standing orders with the nurse if Hill started wheezing.

Hill claims Defendant Meade only checked on Hill once after Hill was placed in the ambulatory restraints. Although Defendant Meade found Hill suffered from no injuries, no shortness of breathe, and did not require any medical attention, Hill contends Defendant Meade found no injuries because she checked on him after he was initially placed in restraints and not after the restraints were removed. Hill alleges that Defendant Meade failed to make any periodic checks on him and Defendant Roff did not assign anyone from the medical staff to check up on Hill or to be present at USP Lee from 10 PM until 6 AM. Hill contends the pain he suffered from the restraints increased over the sixteen hour period because Defendant Meade and other medical staff failed to treat this pain and no medical staff performed period checks. However, other correctional officers did check on Hill's condition every fifteen minutes, and they were

able to alert medical personnel if they observed that Hill needed medical attention. Hill further claims he did not receive his asthma pump, which is prescribed for him to take four times a day and as needed, for the sixteen hours in which he was placed in restraints.

Hill does not provide adequate evidence for a reasonable jury to find that his deprivation was sufficiently serious and that the prison personnel knew of and disregarded any excessive risk to Hill's health or safety. First, Hill fails to show his medical need was sufficiently serious that "even a lay person would easily recognize the necessity for a doctor's attention." Hill asserts that he requested his asthma pump from Defendant Meade during her initial evaluation but she ignored his request. He does not allege that he was without his inhaler after he was released from ambulatory restraints. He only alleges that he needed the inhaler because it was prescribed to him and he experienced some wheezing during the night he was without it. However, he does not allege that he had an asthma attack or difficulty breathing. While it may be ideal for a person to take every dose of medication prescribed to them by a doctor, missing a dose or two of medication is common and does not constitute a serious deprivation of medical need, except under extraordinary circumstances. Hill does not allege that he repeatedly asked for his inhaler, even though he had the opportunity to do so every fifteen minutes when correctional staff checked on his condition. Also, he does not allege that he suffered any severe symptoms, which correctional staff would "easily recognize the necessity for a doctor's attention." Hunt, 199 F.3d at 1224. Therefore, because Hill was only deprived of his inhaler for a short time and alleges no serious symptoms that constitute a serious need for his inhaler during that time, he does not provide sufficient evidence for a reasonable jury to find his deprivation rises to the level of "sufficiently serious."

Second, Hill cannot provide evidence sufficient for a reasonable jury to find that prison personnel knew of and disregarded any excessive risk to Hill's health or safety. Hill alleges Defendant Meade failed to check on him and Defendants Roff and Allred failed to leave instructions with medical staff to check on Hill or how to treat Hill if he started wheezing. However, other prison staff checked on Hill every fifteen minutes and Hill states that if he were to suffer from an asthma attack, prison staff could call 911. Hill also does not allege that he told prison personnel of his injuries or that prison personnel knew of Hill's injuries during the sixteen hour period he was restrained. Further, prison personnel did not disregard any excessive risk to Hill's health or safety. Hill alleges that Nurse Meade assessed Hill after he was initially placed in restraints and that Hill told her the restraints were too tight. At that point, Defendant Meade checked on the restraints and found Hill's blood flow to be normal. Although Hill does not agree with the outcome of her assessment, he received adequate medical attention and prison personnel did not disregard his health or safety. See Wright, 766 F.2d at 849.

Because Hill cannot provide evidence (1) that he suffered from a serious medical need, (2) that he informed prison personnel of his alleged medical need or that they knew of his medical need, and (3) that prison personnel deliberately disregarded any excessive risk to his health or safety, this Court must find no reasonable jury could find in favor of Hill. Therefore, the Court grants Defendant's summary judgment motion on this claim.

### E.  Failure to Adequately Treat Hill's Chronic Asthma

This Court has previously taken judicial notice that "asthma is a serious medical condition that can cause death if untreated." See Memorandum Opinion and Order entered May 28, 2008, pg 10 (Dkt. 9). However, a serious medical condition without more does not satisfy

the deliberate indifference test.  As noted earlier, in order for a prisoner to prevail on a deliberate

indifference of serious medical need claim, he must satisfy both an objective and subjective

component.  The objective component is met if the deprivation is "sufficiently serious."  Farmer,

511 U.S. at 834.  The subjective component is met if a prison official is "deliberately

indifferent," that is if he "knows of and disregards an excessive risk to inmate health or safety."

Id. at 837; Johnson v. Quinones, 145 F.3d. 164, 168-69 (4th Cir. 1998).  Furthermore,

"disagreements between an inmate and a physician over the inmate's proper medical care do not

state a § 1983 claim unless exceptional circumstances are alleged."  Wright, 766 F.2d at 849.

Hill alleges Defendants were deliberately indifferent to the treatment of his chronic

asthma by (1) refusing breathing treatments when Hill complained of wheezing, (2) failing to

give peak flow tests on a daily basis, and (3) housing him in a facility allegedly incapable of

treating his chronic asthma.

Hill claims Defendants intentionally refused breathing treatments when Hill complained

of wheezing and instead administered an oxygen saturation test.  Hill presents no evidence that

he was harmed by not receiving the breathing treatments.  Although Hill disagrees with the type

of medical treatment he did receive, a disagreement between an inmate and physician does  not

state a § 1983 claim.  Wright, 766 F.2d at 849.  Hill also does not allege any exceptional

circumstances which meet the standard of deliberate indifference to serious medical needs

required for an Eighth Amendment violation.  Therefore, this Court grants Defendants' summary

judgment motion as to this claim.

Hill also alleges Defendants failed to conduct daily peak flow tests until January 3, 2008,

even though daily peak flow tests had been ordered by Dr. Allred on November 14, 2007.  Hill

provides no evidence sufficient for a reasonable jury to find that Hill's deprivation was

sufficiently serious and that medical staff knew of and deliberately disregarded an excessive risk to his health or safety. First, Hill provides no evidence to show the lack of peak flow tests was a sufficiently serious deprivation. There is no evidence that Dr. Allred indicated that it was medically necessary to begin the peak flow tests immediately. Also, the tests alone would not have actually treated Hill's asthma or improved his condition; they were simply a diagnostic test. The delay in beginning these diagnostic tests is dissimilar from a hypothetical situation in which a doctor prescribes a necessary medication, such as an antibiotic, to treat a condition, and the medication is intentionally withheld from an inmate, causing the inmate increased to suffer from untreated symptoms. Second, between November 14, 2007 and January 3, 2008, Hill was treated on four occasions by medical staff after he complained of asthma related symptoms, which shows that Hill was given medical treatment for his asthma. On November 29, 2007, Defendant Meade checked up on Hill after a reported asthma attack.

Hill had initially refused treatment, and when Defendant Meade returned to Hill's cell thirty minutes later he was taking a shower, which indicates Hill's medical need was not serious and he did not need urgent treatment. On December 29, 2007, Defendant Meade went to check on Hill using an oxygen saturation machine after Hill began having an asthma attack. On December 31, 2007, Defendants administered the oxygen saturation test on Hill after he began wheezing and gave Hill a breathing treatment. On January 3, 2008, Hill was given another breathing treatment with peak flow tests administered before and after treatments. Therefore, no reasonable jury could find that Hill did not receive adequate medical treatment and medical staff disregarded his health and safety. Because Hill cannot provide evidence sufficient for a reasonable jury to find a deliberate indifference to his serious medical needs, this Court grants Defendants' motion for summary judgment as to this claim.

Lastly, Hill contends USP Lee is incapable of treating chronic illnesses, including asthma. Hill alleges that the Bureau of Prison (BOP) established a Medical Designation Program in which the BOP assigns each inmate a medical classification and care level, and each prison facility a medical designation. The medical designation of an institution is determined by the staff and equipment at the facility. Hill alleges that he is a care level two prisoner and USP Lee is a care level one facility. As a result, Hill argues he should have never been confined at USP Lee because the facility is allegedly ill-equipped and understaffed.

BOP policy is not a constitutional requirement and even if Defendants' violated the BOP guidelines, this would not mean Hill would automatically prevail on his Eighth Amendment claim. Williams v. Benjamin, 77 F.3d 756, 766 & n.5 (4th Cir. 1996). Although Hill alleges that USP Lee is understaffed and ill-equipped, he does not provide any evidence sufficient for a reasonable jury to find that (1) this caused a serious deprivation in his asthma treatment and (2) that prison personnel knew of and disregarded excessive risk to his health and safety. First, Hill asserts, without elaboration, that he was denied access to qualified medical personal which violates his Eighth Amendment right. Hill further alleges, without elaboration, that because USP Lee did not have an institutional pharmacist, Hill would have to wait weeks before receiving necessary medications from a neighboring facility. Hill never specifies when this happened or alleges that he requested medication and suffered injuries as a result of its delayed delivery. Therefore, with such lack of evidence that (1) conditions at USP Lee caused serious deprivation and (2) prison personnel deliberately disregarded any significant risk to his health or safety, this Court must find that no reasonable jury could find in favor of Hill and grants Defendants' summary judgment motion as to this claim.

## F.  January 15, 2008: Excessive Force

As discussed above, in order to prevail on an Eighth Amendment claim of excessive force, a prisoner must satisfy both an objective and a subjective component.  Hill alleges Defendant Taylor, without provocation, grabbed Hill's arm and dug his fingers into Hill's arm causing severe pain.  Hill further alleges Taylor began yelling, "face first, face first," before grabbing the back of Hill's head and pushing him onto the concrete floor.  Taylor then wrote Hill a 307 incident report for refusing to obey an order.  In support of Hill's assertion that Taylor assaulted him without any provocation, Hill points to the fact that he was found not guilty for his refusing an order infraction. Defendants, in contrast, assert Hill became upset and out of control when Taylor advised Hill that he could not go to outside recreation because he was on medical idle.  Taylor alleges that he and another officer tried to place Hill against the wall to gain control of him at which point Hill became even more upset and disruptive that the officers had to place him on the ground. Defendants further contend that the use of force against Hill was necessary and reasonable because Defendants needed to gain control of Hill, were aware of Hill's lengthy discipline history, perceived Hill's actions as a threat, and wanted to prevent Hill from inciting other inmates.  In Hill's memorandum in opposition to summary judgment (p. 25), which is sworn under penalty of perjury, Hill contradicts the defendants' factual allegations by stating that he did nothing to provoke the use of force and was already in handcuffs when Taylor allegedly assaulted him.

Because there is a genuine issue of material fact as to whether there was any need for the force, this Court denies Defendants' summary judgment motion as to this claim.


## G.  Sovereign Immunity

Sovereign immunity bars claims against the United States and federal officials acting within the scope of their authority from being sued without their consent. Automated Mailing and Processing Systems, Inc., 922 F.2d 835, 1991 WL 806, at *1 (4th Cir. Jan. 9, 1991) (unpublished opinion); United States v. Sherwood, 312 U.S. 584, 586 (1941). Bivens did not waive sovereign immunity and plaintiffs cannot bring a Bivens claim against government officials acting in their official capacity. Haywood v. Locke, 387 Fed. App'x 355, 358 (4th Cir. 2010); Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996); Middlebrook v. Leavitt, 525 F.3d 341, 349-50 (4th Cir. 2008).

Hill does not explicitly state whether he is bringing this action against Defendants in their official or individual capacities. But a pro se complaint must be "liberally construed" and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations omitted). Because a Bivens action can only be brought against government officials in their individual capacities, this Court will view this action as allegations against Defendants acting in their individual capacities.

## H. Qualified Immunity

In order to shield public officers from "undue interferences with their duties and from potentially disabling threats of liability," government officials are granted some form of immunity from suits for damages. Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982). The United States Supreme Court has recognized two types of immunity defenses: absolute immunity and qualified immunity. Id. Absolute immunity grants immunity to legislators, in their legislative functions, judges, in their judicial functions, and certain officials of the Executive branch, including prosecutors, executive officers engaged in adjudicative functions, and the President of

the United States. Id. at 807. Prison officials do not fall under the umbrella of persons protected under absolute immunity, but may be entitled to qualified immunity.

Qualified immunity is generally granted to government officials, sued in their individual capacities, performing discretionary functions in so far as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. The purpose of qualified immunity is to "spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." Wilson v. Layne, 526 U.S. 603, 609 (1999) (internal citations omitted). Qualified immunity analysis is identical under § 1983 and Bivens actions. Id. In evaluating a qualified immunity defense, the court must (1) "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all" and if so, (2) "determine whether that right was clearly established at the time of the alleged violation." Id.[2] When determining the second prong, the court must ask whether an official in the defendant's position knew or reasonably should have known that the action he took violated the constitutional rights of the plaintiff. Id. at 614-15; Harlow, 457 U.S. at 815. However, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." Wilson, 526 U.S. at 615 (internal citations omitted).

This Court granted Defendants' motion for summary judgment to all but two of Hill's claims. Therefore, this Court will only address qualified immunity as to Hill's remaining two claims, excessive force by Defendant Crum on November 1, 2008 and by Defendant Taylor on January 15, 2008. Hill has sufficiently alleged the deprivation of an Eighth Amendment

---

[2]     Judges may exercise their discretion in "deciding which of the two prongs of the qualified immunity analysis should be addressed first." Pearson v. Callahan, 555 U.S.223, (2009).

violation in both claims. Based on Hill's version of events occurring on November 1, 2008, he claims Defendant Crum came into his cell and punched Hill in his ribs and elbowed Hill on the side of the head without any provocation and while Hill was already handcuffed. Hill also claims that on January 15, 2008, Defendant Taylor grabbed Hill's arm, dug his fingers in Hill's arm, and pushed Hill's face to the concrete floor without any provocation. Viewing the evidence in a light most favorable to Hill, a trier of fact could conclude that an Eighth Amendment violation had occurred.

With regard to the second prong, Defendants provide no evidence to show that the use of excessive force is not a clearly established right at the time of the alleged violation. "Clearly established" in qualified immunity contexts mean "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates the right." Wilson, 526 U.S. at 615 (internal citations omitted). Indeed, in November of 2008 it was clearly established that the Eighth Amendment forbids the "unnecessary and wanton infliction of pain" against prisoners. Campbell v. Smith, 2010 WL 412736, at *2 (4th Cir. Oct. 21, 2010) (unpublished opinion) (citing Whitley, 475 U.S. at 319). While prison officials may apply force "in a good faith effort to maintain or restore discipline," they must not use force "maliciously and sadistically for the purpose of causing harm." Whitley, 475 U.S. at 320-21. If Hill's allegations are true, the constitutional violation would have been a clearly established at the time of the incident. Thus, this Court rejects Defendants' qualified immunity defense claim with regard to Hill's remaining excessive force claims.

## V. Conclusion

This Court will grant Defendants' motion for summary judgment for the following claims: (1) interference of grievances; (2) November 1, 2007, use of ambulatory restraints and destruction of legal papers by Defendant Martin; (3) November 1, 2007, deliberate indifference to Hill's serious medical needs; and (4) deliberate indifference to Hill's chronic asthma. This Court will deny Defendants' motion for summary judgment based on Hill's claims of Defendant Crum's excessive force on November 1, 2007, and Defendant Taylor's excessive use of force on January 15, 2008. With regard to these two remaining claims, this Court will also reject Defendants' qualified and sovereign immunity defenses.

The Clerk of Court is directed to send a copy of this memorandum opinion and accompanying final order to plaintiff and counsel of record for defendants.

ENTER: This _____ day of April, 2011.

_____
Senior United States District Judge