CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
ROANOKE DIVISION

FEB 16 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| **DEMETRIUS HILL,** | ) |
| | ) |
| Plaintiff, | ) **Case No. 7:08-cv-00283** |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| **TERRY O'BRIEN,** *et al.* | ) **By:  James C. Turk** |
| | ) **Senior United States District Judge** |
| Defendants. | ) |

This matter is before the Court on Defendant William Crum ("Crum")'s renewed Motion

for Judgment as a Matter of Law (ECF No. 173) and Motion for a New Trial (ECF No. 181).

Plaintiff Demetrius Hill ("Hill") filed responses to both motions (ECF Nos. 174, 183).  An in-

chambers hearing was held on January 13, 2012, and the matters are now ripe for disposition.[1]

For the reasons stated below, Crum's Motion for Judgment as a Matter of Law is **DENIED**, and

his Motion for a New Trial is **GRANTED**.

I.      **Factual and Procedural Background**

Plaintiff Demetrius Hill is an inmate in the custody of the Federal Bureau of Prisons.  The

Plaintiff's original Complaint in this case was received for filing on April 9, 2008 (ECF No. 1),

---

[1] While these motions were under advisement, Plaintiff Hill, although still represented by counsel, filed a *pro se* Petition for a Writ of Mandamus with the United States Court of Appeals for the Fourth Circuit. *See* In re: Demetrius Hill, No. 12-1084 (4th Cir. Jan. 17, 2012).  As a general matter, the filing of an appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982).  Here, Hill's *mandamus* petition appears to be concerned exclusively with attorneys' fees, an issue that is not presently before the Court.  Thus, the Court retains jurisdiction over Crum's motions and proceeds to rule on them.

and amended complaints followed shortly thereafter (ECF Nos. 6 & 7). Pursuant to 28 U.S.C. §

1915, the Court dismissed all but three of Hill's claims prior to service on the named Defendants

(ECF No. 10). The remaining Defendants filed a Motion for Summary Judgment on August 27,

2008, arguing that the Plaintiff had (a) failed to exhaust his administrative remedies, (b) failed to

state a claim for excessive force, (c) failed to state a claim for inadequate medical care, and

finally, (d) that the defendants were entitled to qualified immunity. *See* Defs.' Mot. to Dismiss

or in the Alt., Mot. for Summ. J., Aug. 27, 2010, ECF No. 35. The Court granted the motion,

dismissing all of Plaintiff Hill's claims. Plaintiff appealed to the United States Court of Appeals

for the Fourth Circuit (ECF No. 42). While the case was on appeal, the Supreme Court decided

Wilkins v. Gaddy, 130 S.Ct. 1175 (2010), in which it abrogated the Fourth Circuit's decision in

Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1996) (en banc). Specifically, the Supreme Court's

decision annulled the requirement that a Section 1983 or Bivens plaintiff show more than a *de*

*minimis* injury in order to prevail on an Eighth Amendment excessive force claim. The Fourth

Circuit subsequently vacated this Court's judgment on the excessive force claims and remanded

the case for reconsideration in light of Wilkins. *See* Hill v. O'Brien, 387 Fed. App'x 396 (4th

Cir. July 12, 2010). The Fourth Circuit additionally vacated this Court's judgment as to the

Plaintiff's medical indifference claims. *Id.*

After remand and vacation, Defendants filed a renewed Motion for Summary Judgment

(ECF No. 62), whereupon the Court granted summary judgment on all of the Plaintiff's claims

except for (1) that pertaining to Defendant Crum's alleged use of excessive force on November

1, 2007, and (2) that pertaining to Defendant Taylor's alleged use of excessive force on January

15, 2008. Mem. Op., April 4, 2011, ECF No. 68. Importantly for present purposes, the Court

also denied Defendants' claims of qualified immunity on the aforementioned claims at that time. *See id.* at 20–22.

The remaining claims, in sum and substance, centered on two events.  On November 1, 2007, Hill and Delmont Logan were sharing a cell in the Special Housing Unit ("SHU") at U.S. Penitentiary Lee ("USP Lee"), when Logan broke a fire sprinkler, which resulted in the flooding of the cell as well as other parts of the SHU.  A "use of force" team was ordered by the warden to perform a forced extraction of Hill and Logan in order to move them from the flooded cell into a different, dry cell.  Before the team had to resort to force, however, it was able to use "confrontation avoidance procedures" to convince Hill and Logan to voluntarily submit to ambulatory restraints.  Hill was left in these restraints for at least 45 minutes before he was removed from the flooded cell and placed in another cell.  Before Hill was moved from the flooded cell, but after Logan had already been escorted away by another correctional officer, Crum came into the cell.  Crum then punched Hill in the ribs, elbowed him in the side of the head, while screaming something to the effect of, "break another sprinkler, I'll break your neck." The second incident occurred on January 15, 2008.  Hill alleged that Taylor, without provocation, forcibly grabbed and dug his fingers into Hill's arm.  Taylor then allegedly grabbed the back of Hill's head and pushed it against the concrete floor.

Shortly before trial, Crum and Taylor brought yet another Motion for Summary Judgment on the basis of qualified immunity, arguing that since the actions at issue occurred during a period when the *de minimis* injury requirement was still the law of the Fourth Circuit, they should be granted summary judgment because they were acting as reasonable officers would under then-clearly established law.  The Court denied this motion as well (ECF No. 135).

A jury trial was held in this matter in the Big Stone Gap division on October 6 and 7, 2011. Notably, Defendant Crum, with the Court's permission, did not attend the second day of trial because of pain related to a medical disability. At the close of the Plaintiff's case, Crum and Taylor moved for Judgment as a Matter of Law, which the Court denied. Additionally, at the close of the Defendants' case, the parties made cross-motions for Judgment as a Matter of Law, which were also denied. The case was given to the jury, whereupon it found that Defendant Crum was liable to the Plaintiff and awarded damages in the amount of $25,000 (ECF No. 164). The jury also found in favor of Defendant Taylor (ECF No. 165).

## II.   Legal Standards

The Court may grant judgment as a matter of law where it "finds that a reasonable jury would not have a legally sufficient basis" to find for the non-moving party. Fed. R. Civ. P. 50(a)(1). In order to grant a renewed Motion for Judgment as a Matter of Law after trial, the Court must find, "without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." S. Atl. Ltd. P'ship of Tenn. L.P. v. Riese, 284 F.3d 518, 532 (4th Cir. 2002). Moreover, "[i]f the defendant in a run-of-the-mill civil case moves for [judgment as a matter of law] based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

The standard is different on a motion for a new trial, which is governed by Rule 59. The Court must grant a new trial if it concludes that "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of

4

justice, even though there may be substantial evidence which would prevent the direction of a verdict." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (quoting Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996)).

### III.   **Discussion**

#### A. **Judgment as a Matter of Law**

Crum's argument that he is entitled to judgment as a matter of law is based solely on his oft-repeated contention that he is entitled to qualified immunity. His latest volley now comes after the jury returned a verdict against him. Qualified immunity is immunity not simply from liability, but from suit. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Thus, courts should endeavor to adjudicate qualified immunity claims at the earliest possible stage of the proceedings. Here, Crum has previously invoked qualified immunity at both the Motion to Dismiss and Summary Judgment stages. The Court determined, however, that there were genuine issues of material fact that prevented it from making a determination before trial. In contrast to a motion for summary judgment, where the Court decides the motion based on the pleadings and record before it, a motion for judgment as a matter of law must be decided based on the evidence presented at trial. Such a motion based on qualified immunity is no different. "Once trial has been had . . . the availability of official immunity should be determined by the trial record, not the pleadings nor the summary judgment record. After trial, if defendants continue to urge qualified immunity, the decisive question, ordinarily, is whether the evidence favoring the party seeking relief is legally sufficient to overcome the defense." Ortiz v. Jordan, 131 S.Ct. 884, 889 (2011) (internal citation and quotation marks omitted). This Court's duty, therefore, is to review the trial record and determine whether Hill put forth enough evidence at trial to overcome Crum's claim of qualified immunity. The Court finds that he did.

Crum claims that despite the Supreme Court's later repudiation in <u>Wilkins</u>, the Fourth

Circuit's jurisprudence under <u>Norman</u> required a plaintiff to show more than a *de minimis* injury

in order to make out an Eighth Amendment violation. Since <u>Norman</u> was the clearly established

law of the Fourth Circuit in November 2007, Crum reasons, he is entitled to qualified immunity

because Hill's evidence at trial failed to show he suffered anything more than a *de minimis*

injury. Thus, Crum asserts, despite the jury's verdict, the Court has no choice but to grant him

judgment as a matter of law. The Court concludes otherwise.

As the Court has previously stated, under Crum's interpretation of the law, he is

> entitled to qualified immunity for any and all actions done to the plaintiff in the pre-
> <u>Wilkins</u> era, no matter how vile, disgusting, or unreasonable, as long as [he was] sure not
> to leave anything more than a slight injury. This analysis is unavailing. Even before
> <u>Wilkins</u>, the Fourth Circuit warned against such a view: "[C]ourts should be wary of
> finding uses of force that inflict 'merely' pain but not injury to be *de minimis*, and
> therefore beyond requiring justification under the Eighth Amendment." <u>Williams v.
> Benjamin</u>, 77 F.3d 756, 762 n.2 (4th Cir. 1996). This Court is wary of just such an
> interpretation.

Mem. Op. & Ord., Sept. 30, 2011, ECF No. 135 at 5–6.

The qualified immunity doctrine generally protects officers from civil liability unless the

right at issue was "clearly established" at the time of the alleged violation. <u>Cloaninger v.

McDevitt</u>, 555 F.3d 324, 330–31 (4th Cir. 2003). "[G]overnment officials performing

discretionary functions," such as federal correctional officers, "generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>,

457 U.S. 800, 818 (1982). It is a long-standing axiom of American jurisprudence that

government officials must be afforded some form of official immunity in order "to shield them

from undue interference with their duties and from potentially disabling threats of liability." *Id.*

at 806. On the other hand, "[w]here an official could be expected to know that certain conduct

would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action." *Id.* at 819. Thus, the doctrine of qualified immunity is just that—qualified. It is not intended to serve as a complete bar to suits against public officials. Rather, the principle operates simply "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Saucier v. Katz, 533 U.S. 194, 206 (1999).

At trial, Hill testified as follows: after his cellmate Logan broke the sprinkler head inside their cell, Crum came over to the cell and requested that Hill submit to hand restraints. Crum then placed Hill and Logan in handcuffs. Another officer then opened the cell door and escorted Logan out of the cell and down towards another part of the SHU. That left Crum and Hill alone in the cell, with Hill still restrained. Crum then hit Hill in the abdomen with an upper cut, which was apparently the start of a longer assault. Crum continued to punch Hill and elbowed him in the side of the head. As Hill tried to hunch over a desk in the cell in an effort to shield himself, Crum shifted tactics and began to hit him in the ribs instead. While this was happening, Crum told Hill that if he broke another sprinkler, he would break his neck. This assault went on for two minutes before Crum finally escorted Hill to another cell.[2] As a result of this, Hill suffered a bruised rib, dizziness, and a "vicious, vicious headache" that lasted for hours. Crum, on the other hand, denied Hill's allegations while conceding that he had no memory of the specific incident.

---

[2] As a point of reference, two minutes is the length of a round in an Olympic boxing match. Jonathan S. McElroy, *Current and Proposed Federal Regulation of Professional Boxing*, 9 SETON HALL J. SPORT L. 463, 466 (1999).

Crum correctly points out that in 2007, the law of the Fourth Circuit was that a plaintiff had to show more than *de minimis* physical injury in order to prevail on an Eighth Amendment excessive force claim.  Norman, 25 F.3d at 1263.  But the "clearly established law" standard for qualified immunity does not ask whether the plaintiff has met each and every element of the underlying substantive claim.  Rather, the focus is on the officer's state of mind.  Thus, the proper inquiry is whether, in light of pre-existing law, it was apparent to a reasonable officer that his conduct was unlawful.  Anderson v. Creighton, 483 U.S. 635, 640 (1987). *See also* Saucier, 533 U.S. at 202 ("[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"); Amaechi v. West, 237 F.3d 356, 363 (4th Cir. 2001) ("The 'contours of the right' must be drawn in such a way as to provide notice to a reasonable person in the official's position that his conduct violated the identified right."). *But cf.* Wilson v. Layne, 526 U.S. 603, 615 (1999) (finding that it would not have been obvious to reasonable officers that their conduct in allowing media crews to accompany them into a private home while serving a search warrant violated the Fourth Amendment).

Here, the evidence adduced at trial, taken in the light most favorable to the jury's verdict, was that Crum beat an unarmed prisoner repeatedly, and did it to punish him for purportedly breaking a sprinkler.  The facts here are strikingly similar to that of a leading excessive force case, Hudson v. McMillian, 503 U.S. 1 (1992).  In Hudson, an inmate, restrained in handcuffs and shackles, was punched and kicked by prison guards while they were escorting him to an

administrative lockdown area. *Id.* at 4. The Supreme Court held that the prisoner's Eighth Amendment rights were violated, "whether or not significant injury [was] evident." *Id.* at 9. [3]

Moreover, as the Court has previously pointed out, it *was* clearly established law in November 2007 that the "unnecessary and wanton infliction of pain" against prisoners violated the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 327 (1986). Repeatedly punching someone is nothing if not the cause of pain. *See generally* Hope v. Pelzer, 536 U.S. 730, 737 (2002) (recognizing, that gratuitous infliction of "wanton and unnecessary" pain is clearly prohibited by Supreme Court precedent). Hope, 536 U.S. at 737. It is apparent—and cannot be credibly denied—that a reasonable officer in Crum's position in 2007 would have known that repeatedly punching a restrained prisoner in the stomach, ribs, and head for a sustained period, for no other reason but to punish him for a behavioral issue, was unlawful in light of pre-existing law.[4] Crum is not entitled to qualified immunity under these circumstances, whether or not the evidence established that Hill suffered more than a *de minimis* injury.

### B. Motion for a New Trial

---

[3] The Hudson Court also remarked that "The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." 503 U.S. at 9–10. Although this quotation would seem to support Crum's position, it is actually of little import to the matter at hand. First, assaulting a restrained prisoner for an extended period of time *is* repugnant to the conscience of mankind. *Accord* Wilkins, 130 S.Ct. at 1178–79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury"). Second, in Hudson, the Supreme Court was discussing the elements of the substantive claim, which, as discussed above, is analytically distinct from the issue of whether Crum is entitled to qualified immunity.

[4] This characterization of Crum's conduct is based on facts the jury reasonably could have found from the testimony presented at trial. *See generally* Ortiz, 131 S.Ct. at 889 n.3.

9

The Court turns next to Crum's Motion for a New Trial.[5]  Crum asks the Court to grant

him a new trial because (1) the jury's verdict is contrary to the clear weight of the evidence; and

(2) would result in a miscarriage of justice.  Because the Court finds that the jury's verdict is a

miscarriage of justice, it need not reach the issue of whether the verdict is contrary to the clear

weight of the evidence.

### 1. The Jury's Verdict is a Miscarriage of Justice

"[I]f a court finds that a jury award is excessive, it is the court's duty to require a

remittitur or order a new trial."  Atlas Food Sys. & Svcs. Co. v. Crane Nat'l Vendors, Inc., 99

F.3d 587, 593 (4th Cir. 1996).  As discussed more fully below, the Court agrees with Crum that

the jury's verdict was excessive and did not reflect the evidence adduced at trial.  Even if the jury

believed Hill's testimony in its entirety, the greatest extent of the injury it could have reasonably

found consisted of (1) a bruised rib; and (2) a "vicious headache" that did not manifest physical

symptoms after an hour.  See Hill Tr. 21–22.  Additionally, there was little if any evidence that

either of these injuries bothered Hill enough that he felt the need to seek medical treatment.

Hill also argues that the jury's award was proper in part because it compensated him for

"personal humiliation, mental anguish and suffering."  Pl.'s Resp. at 12.  But the only evidence

Hill presented of his emotional injuries, at least as a result of the incident with Crum, was a

single exchange with his counsel.  To wit:

> Q.   This isn't physical, but let's talk about since we're on the November, 2007 incident,
> any emotional or any damages to that effect?

---

[5] Hill argues that Crum's new trial motion is untimely and thus should not be considered by the Court.  It
is true that motions for a new trial must be filed within 28 days of the entry of judgment. Fed. R. Civ. P.
59(b).  However, judgment is not entered until the Clerk has entered judgment in the docket. Fed. R. Civ.
P. 58(c).  The Clerk had not done so as of Crum's motion (and indeed has not done so as of this date);
thus the 28 day period had not yet begun, and the Court is free to consider the motion on the merits.

A.   Well, I felt like Officer Crum took advantage of me. I felt like he took advantage of me because of the fact I was hand cuffed, and that's why I filed this lawsuit. I don't believe he would have done that if I wasn't hand cuffed.

Hill Tr. 23:4–7. This testimony, standing alone, is insufficient to make a showing of emotional damages. "A plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir. 2001) (quoting Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir. 1996)) (internal quotation marks omitted). The evidence presented at trial falls far short of this standard, and accordingly, Hill could not properly recover for emotional distress. See Carey v. Piphus, 435 U.S. 247, 264 (1978) ("[A]lthough mental and emotional distress . . . is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is not so great as to justify awarding compensatory damages without proof that such injury actually was caused"). "Simply put, the jury was presented with insufficient evidence 'to place a high dollar value on plaintiff's emotional harm.'" Hetzel v. Cnty. of Prince William, 89 F.3d 169, 172 (4th Cir. 1996) (quoting Rodgers v. Fisher Body Div., Gen. Motors Corp., 739 F.3d 1102, 1108 (6th Cir. 1984)). Moreover, at trial, the Court determined as a matter of law that Hill had failed to adduce sufficient evidence to justify punitive damages and refused to instruct the jury as to that point. $25,000 in compensatory damages for a bruised rib and an impermanent headache simply shocks the conscience of the Court. It is a miscarriage of justice that cannot stand.

### 2. Remittitur Versus New Trial

11

Having found that the $25,000 award shocks the conscience and cannot stand, the Court now turns to find a remedy. In such a situation, the Court may either order a new trial or issue a remittitur. The decision to grant or deny a new trial is within the Court's discretion. Cline, 144 F.3d at 301.

The Court's ordinary procedure when faced with unreasonably excessive damages lies in the age-old common law practice of remittitur. Under remittitur, a court faced with an excessive verdict calculates the greatest amount of money a jury could have reasonably awarded, and presents the Plaintiff with a choice as to whether to accept the reduced amount or proceed with a new trial. *See* 11 Charles A. Wright, et al., FEDERAL PRACTICE & PROCEDURE § 2815 (2d ed. 1995). The Court is mindful, assuming Hill accepted the reduced amount, that a remittitur would not only aid judicial economy, but save the substantial expenditure of government resources required to again produce a high-security federal inmate for public trial. Nonetheless, "a judge should not hesitate to set a verdict aside where it is so grossly excessive as to be explained only on the basis of sympathy or prejudice." Ford Motor Co. v. Mahone, 205 F.2d 267, 272 (4th Cir. 1953). Moreover, "while mere excessiveness in the amount to be awarded may be cured by a remittitur, that excessiveness which results from passion and prejudice, however natural the resentment which arouses it, may not be so cured." *Id.* The rationale behind this rule is simple—if the jury's excessive verdict was the result of undue passion and prejudice, the underlying determination on liability is also necessarily called into question. Allred v. Maersk Line, Ltd., 826 F.Supp. 965, 970 (E.D. Va. 1993) (citing Minneapolis, St. Paul & Saulte Ste. Marie Ry. Co. v. Moquin, 283 U.S. 520, 521 (1931)), *rev'd on other grounds*, 35 F.3d 139 (4th Cir. 1994).

12

Here, the jury returned a verdict of $25,000—exactly what the Plaintiff asked for. Both parties point the court to the district court's decision in Allred, *supra*, in support of their positions. In Allred, the plaintiff, a seaman, was working aboard a ship owned by the defendant. He began to climb a ladder on the platform, which ladder then slipped and caused the plaintiff to fall to the floor. Testimony at trial showed that as a result of the accident, the plaintiff suffered a 20 to 25 percent permanent partial disability of his left arm. The parties stipulated that the defendant had paid all of the plaintiff's medical bills and also paid him disability compensation while he was unable to work. The jury found in favor of the plaintiff, and awarded him damages in the amount of $1,000,000, which the court found to be excessive. On a motion for new trial, the defendant argued that because the jury awarded $1,000,000, and that was what Plaintiff's counsel asked for, it necessarily sprung from bias or prejudice. The Allred court rejected that argument, concluding that the argument of counsel asking for the same amount as the jury ultimately awarded, standing alone, was not enough to find that the jury's verdict could only be explained by sympathy or prejudice. By contrast, in Ford Motor Co., the Fourth Circuit found that a district court should have ordered a new trial where the verdict was "manifestly unreasonable as to the amount of damages awarded" and where one of the jurors had attempted to send a helpful note to Plaintiff's counsel during the course of the trial. 205 F.2d at 272. In reaching this conclusion, the Fourth Circuit looked favorably upon Brabham v. Mississippi, 96 F.2d 210 (5th Cir. 1938), a case which is more closely analogous to the situation presently before the Court. In Brabham, a minor brought a claim against a Sheriff and two of his deputies, alleging that the deputies had wrongfully and maliciously beaten him. The jury returned a Plaintiff's verdict in the amount of $15,000. The trial court attempted to cure what it regarded as an excessive verdict using remittitur, but the Fifth Circuit concluded that "a new trial ought to

13

have been granted instead of trying to ameliorate a verdict which the trial judge concluded was oppressive and amounted to an injustice." *Id.* at 213. This Court's job is to look at all the circumstances surrounding the trial in order to determine if the jury's verdict was the result of passion or prejudice.

Here, Plaintiff's closing argument here encompassed more than just a request for a specific amount of damages. Specifically, Plaintiff asked the jury to return a verdict of $10,000 in compensatory damages and $15,000 in punitive damages against each defendant. Pl.'s Closing Arg. Tr. 13.[6] At trial, the Court found as a matter of law that there was no evidence presented at trial that punitive damages were appropriate and expressly refused to instruct the jury on those matters. Rather, the jury was instructed that if it found in favor of the Plaintiff, it should only award such damages as would adequately compensate the Plaintiff for those injuries proximately caused by the Defendants. Jurors, are, of course, ordinarily presumed to follow their instructions. Richardson v. Marsh, 481 U.S. 200, 206 (1987). But in this case, it is more than curious that the jury returned an award reflecting the exact amount of compensatory and punitive damages requested. This may give rise to an implication that it improperly awarded the Plaintiff punitive damages.

But more significantly, Plaintiff's closing sought to ignite the passions of the jury. Plaintiff asked the jury to take Crum's absence as a sign that he was uninterested in the proceedings, and that as a result, the jury needed to send him a message. Crum argues that Hill's closing argument, in which his counsel referred to Crum's absence from the courtroom as a show of disrespect to the jury and the process, was improper. The Court has no basis upon which to

---

[6] All citations to the Plaintiff's closing and rebuttal arguments are to the court reporter's unedited, unofficial transcript, to which the Court has obtained access. Page numbers are subject to change.

declare the argument "improper," especially in light of the Defendants' failure to object at trial.[7]

However, the closing argument does give the Court some insight into what may have motivated

the jury's clearly excessive verdict. Defendant Crum had medical problems, and as his counsel

pointed out at the start of trial, he was experiencing significant pain and was not sure he would

be able to attend the second day of the trial. In fact, with the Court's permission, Crum in fact

was absent on the second day. Plaintiff latched onto this fact and asked the jury to interpret

Crum's absence as a show of disrespect to the Court and the proceedings. Specifically,

Plaintiff's counsel said:

> **Well, most importantly** what I would like to point out to the court is that defendant
> Crum is not here today. **I take that personally, and I would hope that the jury would
> look at it also.** The fact of the matter is, he's being sued in this civil case, he's known
> about this case, this case was filed in 2008 . . . .

Pl.'s Closing Arg. Tr. 2 (emphasis added). She then continued:

> That's how serious [Crum] takes this case. The fact is that he was so confident that he
> was going to [win] he doesn't want to waste his [time] being here today. I think that's
> extremely significant and I think that should be viewed by the jury and put the weight to
> it that you should.

*Id.*

Additionally, although this was a <u>Bivens</u> action against two correctional officers in their

individual capacities, Hill's closing was beset with references that Hill's case was against the

federal government, and that the federal government needed to be held accountable for the

Defendants' actions: "The defense will tell you this isn't the Government being sued, these are

these individuals and its coming out of their pockets, that's fine and dandy but there's a defense

---

[7] By the same token, by referring to certain portions of the Plaintiff's summation, the Court does not mean
to criticize his counsel. She was zealously advocating for her client; at the time, neither defense counsel
nor the Court saw fit to object.

attorney for the Government, and you heard yourself Crum stands up and say[s] he didn't know about this lawsuit." Pl.'s Rebuttal Arg. Tr. 2. This incendiary language may have appealed to the jury's perceived suspicion of the federal government.

Ultimately, no one can know with certainty what was in the hearts and minds of the seven jurors who decided this action. The best this Court can do is use its own sense of judgment, honed over many decades, to analyze the objective facts in an effort to discern what the jury was thinking. The sheer excessiveness of the jury's award, coupled with Plaintiff's closing argument appealing to the jury's sense of prejudice against the federal government as well as its distrust of a defendant who, for medical reasons, was unable to attend the second day of the trial, leads the Court to a conclude that the jury's verdict was the product of passion and prejudice. Allowing the verdict to stand would result in a miscarriage of justice that cannot be cured by a remittitur. Accordingly, the Court finds it necessary to grant a new trial.

IV.   **Conclusion**

For the foregoing reasons, Defendant Crum's renewed Motion for Judgment as a Matter of Law (ECF No. 173) is **DENIED.**  Crum's Motion for a New Trial (ECF No 181) is **GRANTED.**

An appropriate Order shall issue this day.

**ENTER**: This 16th day of February, 2012.

James C. Sur

Senior United States District Judge

16