```
             IN THE UNITED STATES DISTRICT COURT FOR THE
                     WESTERN DISTRICT OF VIRGINIA
                          Roanoke Division

------------------------x
                        :
DEMETRIUS HILL,         :
                        :
        Plaintiff,      :
                        :
v.                      :   7:08CV283
                        :
TERRY O'BRIEN, et al.,  :
                        :
        Defendants.     :   Big Stone Gap, Virginia
                        :   October 6, 2011
------------------------x   9:22  a.m.

                  PARTIAL TRANSCRIPT OF TRIAL
              BEFORE THE HONORABLE JAMES C. TURK
          SENIOR UNITED STATES DISTRICT JUDGE, and a jury.
```

APPEARANCES:

```
        ARLENE SOKOLOWSKI-CRAFT, Esquire
        7425 Royalton Road
        North Royalton, Ohio  44133
            Counsel for the Plaintiff.

        THOMAS L. ECKERT, Esquire
        U.S. Attorney's Office
        P.O. Box 1709
        Roanoke, VA 24008
            For the United States of America.
```

Proceedings recorded by Stenography, transcript
produced by computer.

**BRIDGET A. DICKERT**
**UNITED STATES COURT REPORTER**
**180 WEST MAIN STREET, ROOM 104**
**ABINGDON, VIRGINIA 24210**
**(276) 628-5116**

Meade - Direct

```
 1        (Proceedings commenced at 9:22 a.m.)

 2        (Proceedings were had and reported, but not

 3   transcribed.)

 4            TERESA MEADE, DEFENDANT'S WITNESS, SWORN

 5   BY MR. ECKERT

 6   Q    Please state your name and occupation?

 7   A    Teresa Meade, registered nurse.

 8   Q    You're a registered nurse, ma'am?

 9   A    Yes.

10   Q    How long have you been licensed as a nurse?

11   A    Fifteen years.

12   Q    And are you licensed in the State of Virginia?

13   A    Yes, sir.

14   Q    And --

15            THE COURT:  Where did you get your nurse's

16   training?

17            THE WITNESS:  Lincoln Memorial University in

18   Harrogate, Tennessee.

19   BY MR. ECKERT

20   Q    When did you graduate, ma'am?

21   A    1996 or 1995.  I'm not sure.

22   Q    You work at the U.S. Penitentiary in Lee County?

23   A    Yes.  I also work at the Regional Medical Center.

24   Q    That is in Pennington Gap?

25   A    Yes.
```

Meade – Direct

1    Q    What do you do there?

2    A    I'm a registered nurse.  I work on the med/surgical

3    floor.

4    Q    Medical surgical floor?

5    A    Yes.

6    Q    What do you do at USP Lee?

7    A    I'm a registered nurse there, just an on duty RN.  We

8    just do basic nursing care, injury assistance, routine care

9    for inmates.

10   Q    How long have you worked at USP Lee?

11   A    Ten years.

12   Q    How long -- you also have been working at the hospital

13   in Pennington Gap.  How long have you been there?

14   A    Around 15 years.

15   Q    How come you work two jobs?

16   A    I've always -- well, I was a single parent until a few

17   years ago, and I have to work.

18   Q    Were you licensed and working as an RN at USP Lee on

19   November 1, 2007?

20   A    Yes, sir.

21   Q    Now, did you receive any additional nursing training

22   from the Bureau of Prisons?

23   A    When I was first hired we had an emergency nursing

24   class, and an advanced cardiovascular class.  I believe that

25   was all.

Meade – Direct

1   Q    On November 1, 2007 did you have occasion to do a

2   medical assessment of Demetrius Hill?

3   A    I remember it.

4   Q    I'll show you a document here and ask you if this is a

5   copy of your medical assessment from that day?

6   A    Yes, sir.

7   Q    How did you examine Mr. Hill?  Do you remember?

8   A    I don't remember the particular incident, but when

9   they're placed in ambulatory restraints we check their wrist

10  restraints, their leg shackles, the chain that goes around

11  their abdomen to make sure they have good capillary refill

12  and their pulse is good, make sure there's no circulatory

13  impairment.

14  Q    Did you have occasion to see whether or not he was

15  suffering from dizziness, or any other abdominal pain, or

16  anything where he could not stand up, could not, could not

17  maintain his equilibrium or something like that?

18  A    If I had seen it that day I would have documented it.

19  Q    What did you document in there as far as any inmate

20  harm?

21  A    No injuries.

22          MR. ECKERT:  Your Honor, I would ask --

23          THE COURT:  You were examining him because of the

24  restraints on him?

25          THE WITNESS:  Yes, sir.

Meade – Direct

1              THE COURT:  Not because someone had beaten him up,

2    or anything?

3              THE WITNESS:  Any time there's an incident where

4    someone is placed in restraints, or any, pretty much any

5    time they're physically touched by a staff member we do an

6    injury assessment.

7              THE COURT:  Did you check to see the handcuffs

8    weren't cutting off blood circulation, this type of thing?

9              THE WITNESS:  Yes.

10   BY MR. ECKERT

11   Q    If you had noticed any harm from him being assaulted

12   would you have noted that in your report?

13   A    Yes, sir.

14   Q    If you had noticed dizziness, or his inability to

15   stand, or understand things, or to, if he exhibited any pain

16   and told you about that, would you have noted that?

17   A    Absolutely.

18   Q    Did you in this case?

19   A    No.

20             MR. ECKERT:  We renew our motion to enter this

21   document into evidence.

22             THE COURT:  It will be received.

23             MR. ECKERT:  I have no other questions of the

24   witness, Your Honor.

25             THE COURT:  You may cross examine.

Meade – Cross

```
 1                      CROSS EXAMINATION
 2  BY MS. SOKOLOWSKI-CRAFT
 3  Q    I'll make it very quick.  You indicated that you have
 4  been at USP Lee for over ten years, correct?
 5  A    Ten years October 23rd.
 6  Q    And you indicated that you reviewed Mr. Hill, and as
 7  you testified it was only for the ambulatory restraints,
 8  correct?
 9  A    Yes.
10  Q    Do you remember what time you looked at him?
11  A    No.  I would have to look on the document and see.  To
12  this day I can't remember that time.
13  Q    Do you remember talking to Mr. Hill at all?  Was there
14  any conversation between you, yourself, and Mr. Hill?
15  A    Normally when I do a restraint check I always ask the
16  inmate if they have any injuries or anything to report.
17  Q    Would you note that on your records if you asked them?
18  A    I wouldn't put it if I asked them.  If they had told me
19  they had an injury I would have put inmate voiced such and
20  such complaint.
21  Q    Okay.  Do you remember anything -- obviously, you're
22  testifying today as to this date, but other than your
23  testimony was there anything significant about that day that
24  would make you remember it as opposed to any other
25  individuals?
```

Meade - Cross

1   A     No.

2   Q     How often, how often do you actually do these types of

3   ambulatory restraint checks?  Is it, how often is somebody

4   placed in an ambulatory restrains?

5   A     Several years ago I would say quite frequently, but in

6   the past two years I only know of two or three.

7   Q     Why is that?

8   A     Well, I really can't tell you.  Difference in inmates,

9   different administration.  I don't know.  Different rules,

10  maybe.

11  Q     So it's just not as commonly used, the ambulatory

12  restraints?

13  A     No.  I mean, if an inmate resists a staff member, then

14  they're put into ambulatory restraints.  But we don't have a

15  lot of trouble at this moment.

16  Q     Okay.  That's obviously always good.  And for the jury,

17  can you explain to the jury what ambulatory restraints are

18  and how they are put on a person?

19  A     There are wrist cuffs, handcuffs, and they are placed

20  on the inmate, there's a chain that goes around their

21  abdomen, and they connect the wrist restraints with the

22  chain on the abdomen.  I'm not really sure what that's

23  called.  And then they're in a set of shackles on their

24  ankles.

25  Q     Are they seated or standing?

Meade – Cross

```
 1   A     Standing.  Normally standing.

 2   Q     When you check them you take a view, and what do you

 3   do, take their pulse?

 4   A     We take their pulse, we check their fingernail beds for

 5   good circulation, we put our fingers underneath the cuffs to

 6   make sure there is adequate room between the cuffs and the

 7   skin, and same thing for the feet.  And then with the chain

 8   that goes around their abdomen, we always put our hand

 9   underneath that to make sure it's not too tight.

10   Q     You're specifically focused on those restraints then?

11   A     Yes.

12   Q     If somebody doesn't say to you, "I have a headache,"

13   or, "I have a neck injury," or something like that, you're

14   probably not looking at anything above this mark?

15   A     Usually we do a visual.  Unless they tell me they have

16   a specific complaint, we don't look at that particular area

17   like an elbow or a knee until they say that that is injured.

18   Mostly it's just basically look at an individual, look in

19   their mouth, look at their lips.

20   Q     Just a quick question.  When -- I know you have nothing

21   to do with disciplinary hearings, or anything like that.

22   Have you ever been called in to give any testimony or any

23   information ever during a disciplinary hearing relating to

24   inmates and injuries or officer's injuries?

25   A     One inmate asked me to come to the disciplinary
```

Meade – Cross

1    hearing, a DHO hearing, and I believe they ended up

2    cancelling it, but I was just going to be a witness one time

3    that I can remember.

4    Q    That was because the inmate asked for you?

5    A    Yeah.

6    Q    So, so, USP Lee has never come in and asked you to

7    explain anybody's injuries?

8    A    Oh, yes, in the court system I've been here several

9    times.

10   Q    Oh, okay.  In the court system?

11   A    Yeah.

12   Q    But not during disciplinary hearings of inmates?

13   A    Are you talking about at the institution?

14   Q    Yeah, the institution.

15   A    The DHO hearings, I've only been called in once.

16   Q    Okay.

17            MS. SOKOLOWSKI-CRAFT:  I have no further

18   questions.

19            THE COURT:  Let me ask you, where was Mr. Hill

20   when you conducted your examination?

21            THE WITNESS:  I honestly can't remember.

22            THE COURT:  Was he in a cell with broken

23   sprinklers spewing water?

24            THE WITNESS:  Sir, I can't remember that.

25            THE COURT:  You would remember that before you

Meade - Redirect

1    examined him, wouldn't you?

2            THE WITNESS:  Not really.  It's been many years.

3    Unless I've got it documented on paper exactly, I can't

4    really remember.

5            THE COURT:  You don't know whether he had been

6    removed from his cell and was in a holding cell?

7            THE WITNESS:  Normally if they break their

8    sprinkler head, like I can't remember this particular case,

9    if they break their sprinkler head they're put in a holding

10   cell.

11           THE COURT:  And that's where you would conduct

12   your examination?

13           THE WITNESS:  Yes, sir.

14           THE COURT:  Okay.  Any additional questions of

15   this witness?

16           MR. ECKERT:  A follow up, if I might.

17                    REDIRECT EXAMINATION

18   BY MR. ECKERT

19   Q    If Mr. Hill complained that he was hurt in any way,

20   that he was dizzy, that he was in pain, anything like that,

21   would you have noted it in that report?

22   A    Absolutely.

23   Q    And in this report there's no such notes?

24   A    No.

25   Q    Okay.

Meade – Redirect

```
 1        (Proceedings were had and reported, but not
 2   transcribed.)
 3        (Proceedings concluded at 3:50 p.m.)
 4
 5                          CERTIFICATE
 6
 7        I certify the foregoing is an accurate transcript
 8   from the record of proceedings in the above-entitled
 9   matter.
10
11
12   4/17/11                   /s/ Bridget A. Dickert
     Date                      U.S. Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25
```